# Exhibit A

# Affidavit

# Defendant Losinki

Exhibit A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATHIREE ALI #175762,

Plaintiff,

v

SUSAN KNIGHT, CHERYL PITTS, GREGORY TORREY, KIRSTEN LOSINSKI, and MICHIGAN DEPARTMENT OF CORRECTIONS,

Defendants.

NO. 1:22-cv-287

HON. JANET T. NEFF

MAGISTRATE JUDGE SALLY J. BERENS

---

Fathiree Ali #175762
*In Pro Per*
Saginaw Correctional Facility
9625 Pierce Rd.
Freeland, MI 48623

Jennifer A. Foster (P75947)
Assistant Attorney General
Attorney for Defendants
Michigan Dept. of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
Fosterj15@michigan.gov

---/

AFFIDAVIT OF KRISTIN LOSINSKI

I, Kristen Losinski, do solemnly swear and say:

1. If sworn as a witness, I can testify competently and with personal knowledge to the facts contained within this affidavit.

2. At the time the allegations in the complaint arose, I was employed by the Michigan Department of Corrections as the Classification Director at Lakeland Correctional Facility.

3. According to policy, all able-bodied prisoners are required to have a work assignment or otherwise be enrolled in school, per policy.

4. As prisoners came to Lakeland and were able to work, they were all processed through classification into an institutional needs pool. This pool filtered into Food Service, Unit Porter, and Recreation Worker.

5. When a position opened in one of those areas, the next name on the list was assigned to that position, as set forth in policy 05.01.100.

6. After working 6 months in an assignment, they could request to be classified to a more desirable work assignment, per policy.

7. We use this method of classification and filing institutional needs first, because Lakeland has a large lifer population who do not change jobs often. If we allowed everyone coming to the facility to pick their own work assignment, the wait pool for the most desirable work assignments would be extensive, effectively allowing a prisoner not to work for a long period of time without any consequences and causing the facility to not run effectively due to worker shortages.

8. Requiring all prisoners to work based on institutional needs, keeps the process fair for everyone and allows us to fill less desirable positions to help run the facility. Allowing someone to circumvent that process could cause animosity from the prisoners who have already gone through the process or appear as favoritism.

9. When the open position came up in food service, Mr. Ali's name was next on the list and he was assigned to that position.

10. Like work assignments, all prisoners start from the same place in food service — on the serving line. It's possible they would not stay on the line long; it depended on how often other prisoners were transferred or moved to other work assignments, but all started at an equal place. As other positions came open in food

service, the prisoners would have an opportunity to do something different based on experience and seniority. Those who worked in food service longer would get the opportunities to do something different before someone new would have the opportunity to select a more desirable position in the kitchen.

11. If a prisoner refuses a work assignment, they are placed on "OO" status per policy. Policy also requires that prior to placing a prisoner on "OO" status, you inform them of the consequences of that status. During normal work hours, "OO" status requires the prisoner to stay in their cell, except for certain approved activities, so they do not engage in more extracurricular time while others are working as assigned. No prisoner is forced to work, they have a choice, but the choice not to work will restrict them during work hours.

12. Mr. Ali was referred back to me by Food Service Director Torrey, because Mr. Ali was refusing to complete and sign his orientation acknowledges.

13. This could result in placement on "OO" status because refusing to sign orientation documentation is akin to refusing the work assignment.

14. I spoke with Mr. Ali and he claimed that handling a tray that had meat on it would violate his religious beliefs. I had never before had a prisoner claim they could not handle a tray that had meat on it. When Mr. Ali made this claim, I contacted the Special Activities Coordinator at the time and was told handling the tray would not violate a Muslim's beliefs.

15. Mr. Ali was assigned to food service from December 21, 2018, till February 8, 2019.

16. I did not treat Mr. Ali differently than I treated anyone else. Every prisoner who came to Lakeland went through exactly the same classification process.

17. At no time did I violate Mr. Ali's constitutional rights.

18. At all times I acted in accordance with my capacity as a Classification Director, in good faith, within the scope of my authority, and in accordance with my understanding of the statutes, rules and policies governing the Michigan Department of Corrections.

AFFIANT SAYS NOTHING FURTHER

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on: 5/10/24 [signature]

Kirsten Losinski