# Exhibit D

# Policy Directive

# 05.01.100

Exhibit D

| MICHIGAN DEPARTMENT OF CORRECTIONS<br>**POLICY DIRECTIVE** | EFFECTIVE DATE<br>11/01/2018 | NUMBER<br>05.01.100 |
|---|---|---|
| SUBJECT<br>PRISONER PROGRAM CLASSIFICATION | SUPERSEDES<br>05.01.100 (10/01/2017) | |
| | AUTHORITY<br>MCL 791.203 | |
| | PAGE 1 OF 7 | |

**POLICY STATEMENT:**

The programming needs, risks, and strengths of prisoners in Correctional Facilities Administration (CFA) institutions shall be assessed by incorporating evidence-based principles, assessments, individualized case planning, and specialized transition planning as set forth in this policy.

**RELATED POLICIES:**

04.01.105 Reception Facility Services
04.05.120 Segregation Standards
05.02.112 Education Programs for Prisoners
05.03.150 Religious Beliefs and Practices of Prisoners

**POLICY:**

GENERAL INFORMATION

A. in conjunction with the Administrator of the Offender success Administration, the CFA Deputy Director shall ensure that the Program Classification Manual is maintained, reviewed annually, and updated as needed. The manual shall set forth the objectives of program classification, program referral criteria, and the methods for achieving them. The manual shall be available to staff involved in program classification.

B. Core programs offered at CFA facilities are identified in Attachment A. Prisoner placement into these Core programs shall be prioritized by Parole Board Jurisdiction (PBJ) date in accordance with the referral criteria outlined in the Program Classification Manual. However, if a habitual offender is eligible to receive good time and/or disciplinary credits on his/her minimum sentence, eligibility for programming shall be based on his/her minimum date unless the sentencing judge or his/her successor does not approve parole prior to the PBJ date in accordance with PD 03.01.102 “Habitual Offenders.”

C. Each prisoner received at a reception facility shall be assessed for program needs in accordance with PD 04.01.105 "Reception Facility Services.”

D. Once a prisoner has been enrolled into a Core program or has arrived at the receiving facility for such programming as requested by CFA Classification Section, a Department detainer shall be issued for the duration of the program. Prior to initiating any transfer, staff must check to see if the prisoner is enrolled in a Core program. Unless there is a significant reason for transfer (e.g., healthcare), prisoners enrolled in Core programs are not to be transferred prior to completion of the program.

E. Each Warden shall designate a Classification Director for the institution. The Classification Director shall have authority to classify prisoners to program and work assignments subject only to review by the CFA Deputy Director or designee, the Warden or designee, the Offender Success Administrator or designee, or Parole Board. The prisoner’s initial Core program recommendations shall not be altered without the authorization of the Offender Success Administrator or designee or the Parole Board.

INITIAL PROGRAM CLASSIFICATION

F. The classification process identified in PD 04.01.105“Reception Facility Services” shall be followed for assessing prisoners on quarantine status at reception facilities for program needs. All other prisoners shall have their initial program classification process conducted as detailed in Paragraphs G - J of this policy.

G. Within seven business days after orientation is provided at each facility in accordance with PD 04.01.140 "Prisoner Orientation," each prisoner shall be interviewed by the Classification Director or designee to determine initial program classification. The prisoner's institutional files must be reviewed prior to conducting the interview.

H. During initial classification at each facility, prisoners shall be classified to work and program assignments using the Program Classification Report (CSX-175) and case plan and referred to programs in accordance with the program recommendations established at the reception facility in accordance with PD 04.01.105 "Reception Facility Services" or, as otherwise authorized by the CFA Deputy Director or designee, consistent with this policy. Institutional needs and resources, custody and security concerns, any special needs of the prisoner, the prisoner's Prison Rape Elimination Act (PREA) Risk Screen, the prisoner's eligibility for reduced custody, discharge, and parole, and, to the extent possible, the prisoner's preference also shall be considered when making program classification decisions. The prisoner's history of assaultive or predatory behavior shall be considered before assigning a prisoner to a sensitive or isolated assignment or to an assignment supervised by only one staff person.

I. A prisoner may be given preference for an assignment for which s/he has related experience or training. If an appropriate work assignment or program vacancy does not exist at the time of the initial classification, the prisoner shall be placed on a waiting list (i.e., "pool") for the assignment or program.

J. The Classification Director shall outlines initial classification decisions, program referrals, enrollments, and terminations for each prisoner on the CSX-175 and case plan. The Classification Director also shall notify appropriate staff whenever a prisoner is assigned to a work or program assignment or is referred for placement in institutional programs. All prisoner work and program assignments data shall be recorded and stored in the Department's computerized database utilizing the CSX-175 and the case plan.

K. Prisoners designated as Security Threat Group (STG) I or II shall be classified to a work or academic assignment or placed in any program consistent with PD 04.04.113 "Security Threat Groups."

CLASSIFICATION REVIEW

L. Each prisoner shall be provided with a program classification review at least every six months. The Resident Unit Manager (RUM) or designee shall interview the prisoner to discuss the prisoner's progress toward program recommendations and eligibility for custody reduction. The prisoner's progress shall be recorded on the CSX-175 and the case plan and submitted to the Classification Director. The Classification Director shall ensure the reports are complete and contain accurate and relevant information. If the reports also include either a request from the prisoner or a recommendation from staff for reclassification, the Classification Director shall proceed as set forth below.

RECLASSIFICATION

M. A prisoner may be reclassified for any number of reasons, including but not limited to the following:

1. Upon request of the prisoner or the recommendation of any staff member. However, repeated prisoner requests that are deemed inappropriate need not be acted upon.

2. The prisoner has successfully completed an education program.

3. The prisoner has demonstrated responsibility in a work assignment for at least six months and a more desirable assignment is being requested or recommended.

4. The prisoner is not progressing in, or has difficulty in adjusting to, an assignment or program as documented on the Prisoner Program and Work Assignment Evaluation (CSJ-363) or Education Program Plan (CSJ-363A), as appropriate.

5. The prisoner has been terminated from an assignment due to behavior related to that assignment (e.g., misconduct, poor performance, security issues). A prisoner who has been terminated from an assignment for such behavior may not be returned to that assignment until at least 180 calendar days after the date of termination.

6. The prisoner no longer meets the criteria for being considered unemployable, as set forth in Paragraph BB.

7. Institutional needs and resources.

8. Documented behavioral issues of the prisoner.

9. Removal or addition of STG I or STG II designation.

10. When a prisoner has been found to have engaged in inappropriate conduct with contractual staff while on assignment. In such cases, the prisoner shall be reassigned to a comparable work assignment, ensuring safety, custody, and security concerns are met.

N. Each prisoner requesting reclassification in accordance with this policy, or for whom a reclassification is recommended by a staff person, shall be interviewed by his/her RUM or designee. The RUM or designee shall discuss the request and/or recommendation with the prisoner and review the prisoner's progress toward program recommendations. The RUM or designee shall summarize the reasons for the request and/or recommendation utilizing the CSX-175 and case plan, including his/her recommendation, and notify the Classification Director of the need for review.

O. The factors identified in Paragraphs H and I for classification decisions shall be used when making reclassification decisions. If the Classification Director and the prisoner agree with the reclassification, no further interview is necessary before the prisoner is reclassified. If the Classification Director or prisoner disagrees with the reclassification, the Classification Director shall interview the prisoner before reaching a final reclassification decision.

RETURN FROM TEMPORARY ABSENCE

P. A prisoner who returns from a temporary absence from the institution (e.g., jail, hospital) within 30 calendar days shall be returned to the assignment s/he had prior to leaving, if available. If the position is not available, the prisoner shall be placed at the top of the pool for the assignment from which s/he was removed. This also shall apply if a prisoner is temporarily unable to work or attend education program assignments due to a documented medical restriction but is cleared within 30 calendar days.

Q. A prisoner who returns from a temporary absence within 30 calendar days shall retain his/her original placement on any assignment pools s/he was in prior to leaving. This also shall apply if a prisoner is temporarily unable to work or attend education program assignments due to a documented medical restriction but is cleared within 30 calendar days.

R. A prisoner who returns from an absence after more than 30 calendar days shall be reclassified or interviewed for initial classification, as determined by the Classification Director.

WORK/ACADEMIC/CTE/EMPLOYMENT READINESS ASSIGNMENTS

S. All employable prisoners shall be classified to a work assignment unless assigned to education programs in accordance with PD 05.02.112 "Education Programs for Prisoners." Prisoners shall be assigned to only one work assignment at a time. However, prisoners classified to any dog handler assignment, a prisoner observation aide assignment, or a prisoner palliative care aide assignment may have dual work assignments as authorized by the Warden. Any other dual work assignment types must be authorized by the Deputy Director or designee. In addition, prisoners in facilities identified by the CFA Deputy Director may be assigned to more than one work assignment due to the lack of prisoners available and/or medically cleared to work. Prisoners who have not completed required General Education Development (GED) programming may be assigned to a combination of work, academic, CTE, or employment readiness as approved by the Warden consistent with PD 05.02.112. However, a Warden shall not prohibit a prisoner from being assigned to a combination assignment solely because the prisoner has not completed required GED programming. The scheduling of combination assignments shall not interfere with critical activity on a work assignment (e.g., peak hours in food service). Whenever possible, a prisoner's workday shall simulate the work day in the community.

T. Prisoners may be assigned to public works and gate pass assignments if they meet the eligibility requirements set forth in PD 03.02.121 "Public Works/Gate Pass Assignments."

U. The Warden or designee shall identify work assignments that are to be considered special security assignments. Factors that shall be considered in making this determination include the location of the assignment, use of critical tools, amount of supervision, and degree of contact with the public. The Warden shall ensure screening criteria is developed and that prisoners are screened prior to placement in such assignments. A prisoner who has either been convicted of an offense or found guilty of a misconduct involving serious assaultive behavior toward staff, including a sexual assault that involved injury or use of a weapon within the preceding five years shall not be placed on a special security assignment. Questions as to the seriousness of the behavior shall be directed to the Warden or designee for a final determination prior to placement on the assignment.

V. Prisoners may be classified to Michigan State Industries (MSI) assignments consistent with the MSI Operating Manual developed pursuant to PD 05.02.110 "Prisoner Work Assignment Pay and School Stipend."

W. Prisoners may be classified to a Prisoner Observation Aide (POA) assignment consistent with PD 04.06.115 "Suicidal and Self-Injurious Behavior."

X. Prior to placing a prisoner in a food service or health service area assignment, the Classification Director shall ensure the prisoner is cleared to be placed in that assignment by Bureau of Health Care Services (BHCS) staff.

Y. The Classification Director has the primary responsibility to ensure referrals are recorded in the Department's computerized database in a timely and accurate manner. The Classification Director shall maintain a list of all institutional work assignments available to prisoners and, as necessary, a pool of eligible prisoners for each assignment. When a pool exists for an assignment and an opening occurs, the Classification Director shall ensure that prisoners are assigned in the same order they were placed in the pool.

Z. Staff supervision shall be provided for each assignment. No prisoner shall have authority or control over another prisoner.

AA. Assigned prisoners shall be paid for work assignments and/or receive education program stipends in accordance with PD 05.02.110 "Prisoner Work Assignment Pay and School Stipend" or, for prisoners assigned to public works, PD 03.02.121 "Public Works/Gate Pass Assignments."

UNEMPLOYABLE PRISONERS

BB. A prisoner may be reclassified as unemployable and therefore be ineligible for a work or an education program assignment for any of the following reasons:

1. The prisoner has a currently valid medical restriction that prohibits participation in work and education program assignments.

2. The prisoner is in segregation and not eligible for work and education program assignments pursuant to PD 04.05.120 "Segregation Standards."

3. The prisoner refused to accept, or fails to fully and actively participate in, a work assignment or an education assignment required pursuant to PD 05.02.112 "Education Programs for Prisoners." This includes refusing or failing to fully and actively participate in required testing. However, this does not include prisoners in need of special education pursuant to PD 05.02.115 "Special Education - Procedural Safeguards."

4. The prisoner refuses to attend a CTE or employment readiness assignment pursuant to PD 05.02.112 "Education Programs for Prisoners." This does not include refusals at the time of the vocational counseling.

5. The prisoner refused to participate in program classification as required by this policy.

6. The prisoner has a documented history of disruptive behavior on a work or academic assignment.

7. The prisoner has a documented history of disruptive behavior on a CTE or employment readiness assignment.

CC. Prior to being reclassified as unemployable, appropriate staff shall ensure the prisoner understands the consequences of that action by reviewing the Assignment Waiver Form (CSJ-126) with the prisoner and, as appropriate, witness the prisoner's signature, or refusal to provide a signature, on the form. This paragraph does not apply to prisoners who are unemployable due to medical restrictions or placement in segregation.

DD. Prisoners classified as unemployable shall not be permitted to participate in any more leisure time activities than those who work full time. Prisoners classified to unemployable status shall be permitted to attend primary religious services and approved holy day observances but shall not be permitted to attend other religious activities, consistent with PD 05.03.150 “Religious Beliefs and Practices of Prisoners.” However, this does not apply to prisoners who are unemployable due to medical restrictions although the medical restriction may preclude participation in certain activities, as determined by BHCS.

EE. Prisoners classified as unemployable pursuant to Paragraph BB, number 4 or 7, shall be placed on unemployable status for 30 calendar days only.

FF. Prisoners classified as unemployable for all other reasons listed in Paragraph BB shall be considered for reclassification every 30 calendar days until a reclassification is complete. Once reclassification has been completed, the prisoner shall remain on unemployable status until returned to a work or an education program assignment or, if on a medical restriction, after BHCS staff have medically cleared the prisoner to return to a work or an education program assignment. The prisoner may come off unemployable status before returning to a work or an education program assignment if the reclassification has been completed and with the Warden’s approval. This does not apply to prisoners in segregation who are unemployable because they are not eligible for work and education program assignments pursuant to PD 04.05.120 "Segregation Standards.”

MISCONDUCTS

GG. With prior approval of the Warden, a prisoner may be temporarily suspended (i.e., “laid in”) from his/her work assignment for up to 90 calendar days for documented safety and security concerns pending investigation. If at the end of the investigation, a misconduct is not issued, or the prisoner is not found guilty of the misconduct, then s/he shall be paid for the time from assignment removal until the resolution. The prisoner may be returned to the same assignment or considered for reclassification in accordance with this policy, as determined by the Warden.

HH. With prior approval of the Warden or designee, a prisoner who is charged with any misconduct may be temporarily suspended (i.e., "laid in") from his/her assignment pending the misconduct hearing. However, if a prisoner who is assigned to a public works or gate pass assignment is charged with a Class I or Class II misconduct, whether the misconduct was received on the assignment or elsewhere, the prisoner shall be immediately suspended from his/her assignment.

II. If the prisoner is found guilty at the initial misconduct hearing, s/he shall be considered for reclassification in accordance with this policy. The prisoner shall not be returned to the same assignment if the Classification Director determines it to be a threat to the safety or security of the facility. If the guilty finding is subsequently reversed either on rehearing or on appeal, the prisoner shall be paid for any time s/he was removed from the assignment pending the initial hearing.

JJ. If the prisoner is not found guilty at the initial hearing, s/he shall be paid for any time s/he was removed from the assignment pending the hearing. The prisoner may be returned to the same assignment or considered for reclassification in accordance with this policy, as determined by the Classification Director. The prisoner shall not be returned to the same assignment if the Classification Director determines it to be a threat to the safety or security of the facility.

PERFORMANCE EVALUATIONS

KK. Prisoners assigned to work or placed in recommended education programs, shall be evaluated by the assignment or program supervisor using the Prisoner Program and Work Assignment Evaluation (CSJ-363), Education Program Plan (CSJ-363A) as appropriate. Prisoners on education program assignments, including cell study, shall be evaluated quarterly. Prisoners on work assignments shall receive an initial evaluation after two months and every six months thereafter. However, prisoners assigned to a food service assignment prior to April 1, 2008 shall be evaluated as set forth in PD 05.02.110 “Prisoner Work Assignment Pay and School Stipend.” Prisoners assigned to other programs shall be evaluated as determined by the program supervisor. Evaluations shall be discussed with the prisoner and submitted to the Classification Director for review.

LL. If a prisoner earns a below average score on the CSJ-363 or CSJ-363A for his/her work or education program assignment, his/her performance shall be closely monitored for the next 30 calendar days, after which another CSJ-363 or CSJ-363A will be completed as appropriate. If after 30 calendar days the prisoner does not raise the score on the CSJ-363 or CSJ-363A to a satisfactory/average score, the prisoner shall be referred for reclassification.

MM. When termination from a work or education program assignment is necessary, the recommendation shall be submitted by the assignment supervisor using a CSJ-363 or CSJ-363A, as appropriate, and forwarded to the Classification Director. The RUM or designee shall be notified whenever a prisoner is terminated. The prisoner shall be considered for reclassification in accordance with this policy.

TERMINATION FROM PROGRAMS

NN. Prisoners who refuse enrollment in, or are terminated prior to completion of, the Core programs listed in Attachment B due to behavior inside or outside the classroom shall be notified that they are ineligible for placement on the program’s waiting list as outlined in Attachment B. The ineligibility period shall be calculated from the refusal or termination date. Subsequent refusals or terminations also shall result in ineligibility as listed in Attachment B, calculated from that subsequent removal or termination date unless otherwise approved by the Parole Board, Program Development Unit, Office of Substance Abuse Services, or Mental Health Services, as appropriate.

OO. Prisoners who voluntarily refuse to enroll in or are terminated from the Core programs listed in Attachment A as a result of their actions and/or behavior shall have the program referral closed in the Department’s computerized database and case plan and shall be placed back on the waiting list for the program when they become eligible to participate. Information detailing the termination reason, period of ineligibility, and date prisoner is eligible for reconsideration, shall be documented in the termination reason field and notes section of each Core program’s record in the Core program tracking tab in the Department’s computerized database and case plan. Discharge reports shall be completed and call-outs cancelled as appropriate.

PP. Prisoners placed in recommended Core programs shall be evaluated using the Substance Abuse Client Discharge Form (CSJ-111) or other discharge form as appropriate.

QQ. Prisoners who refuse to participate in the Core programs listed in Attachment A shall be referred to the Warden or designee, who shall advise the prisoner that refusals may be taken into consideration by the Parole Board.

PROCEDURES

RR. If necessary, to implement requirements set forth in this policy directive, Wardens shall ensure that operating procedures are developed or updated.

AUDIT ELEMENTS

SS. A Primary Audit Elements List has been developed and is available on the Department’s Document Access System (DAS) to assist with self-audit of this policy pursuant to PD 01.05.100 "Self-Audits and Performance Audits.”

ATTACHMENTS

TT. This policy includes the following attachments:

1. Attachment A - Core Programs

2. Attachment B - Ineligibility Period for Refusing to Participate in, or Termination from, a Core Program

APPROVED: HEW 09/24/2018

## ATTACHMENT A

## CORE PROGRAMS

CORE PROGRAMMING FOR MALE PRISONERS:

1. Academic Education
2. Advanced Substance Abuse Treatment (ASAT)
3. Batterer's Intervention
4. Career and Technical Education (CTE)
5. Employment Readiness
6. Michigan Sex Offender Program (MSOP)
7. Post-Secondary Education/College
8. Routine Work Assignment (RWA)
9. Substance Abuse Outpatient (SA Phase II)
10. Thinking for Change (T4C)
11. Violence Prevention Program High (VPP High)
12. Violence Prevention Program Moderate (VPP Moderate)
13. Vocational Village

CORE PROGRAMMING FOR FEMALE PRISONERS:

1. Academic Education
2. Advanced Substance Abuse Treatment (ASAT)
3. Beyond Violence
4. Career and Technical Education (CTE)
5. Employment Readiness
6. Meridians
7. Moving On
8. Post-Secondary Education/College
9. Routine Work Assignment (RWA)
10. Substance Abuse Outpatient (SA Phase II)
11. Sex Offender Program (SOP)
12. Seeking Safety

13. Vocational Village

**ATTACHMENT B**

**INELIGIBILITY PERIOD FOR REFUSING TO PARTICIPATE IN, OR TERMINATION FROM, A CORE PROGRAM**

| **Male Core Programs** | **1st Refusal/ Termination** | **2nd Refusal/ Termination** | **Any Subsequent Refusals/ Terminations** |
|---|---|---|---|
| 1. ASAT<br>2. Batterer's Intervention<br>3. SA Phase II<br>4. T4C<br>5. VPP High<br>6. VPP Moderate | 90 calendar day ineligibility period* | 180 calendar day ineligibility period* | 180 calendar days before eligible for reconsideration (prisoner must submit written request)* |
| 7. MSOP<br>8. SOP | 90 calendar days before eligible for reconsideration (prisoner must submit written request)* | 180 calendar days before eligible for reconsideration (prisoner must submit written request)* | 180 calendar days before eligible for reconsideration (prisoner must submit written request)* |
| **Female Core Programs** | **1st Refusal/ Termination** | **2nd Refusal/ Termination** | **Any Subsequent Refusals/ Terminations** |
| 1. ASAT<br>2. Beyond Violence<br>3. Meridians<br>4. Moving On<br>5. Seeking Safety<br>6. SA Phase II | 90 calendar day ineligibility period* | 180 calendar day ineligibility period* | 180 calendar days before eligible for reconsideration (prisoner must submit written request)* |
| 7. SOP | 90 calendar days before eligible for reconsideration (prisoner must submit written request)* | 180 calendar days before eligible for reconsideration (prisoner must submit written request)* | 180 calendar days before eligible for reconsideration (prisoner must submit written request)* |
| * unless otherwise approved by the Parole Board, Offender Success Administration, Program Development Unit, Office of Substance Abuse Services, or Mental Health Service | | | |

**Note: The above waitlist ineligibility timeframes do not apply to academic, CTE, and Employment Readiness.**