FILED
July 22, 2024 12:03 PM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
ems  Scanned by ES /7/22

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

FATHIREE ALI,

    Plaintiff,

                          Case No. 1:22-cv-287

vs                          Honorable Janet T. Neff

                          Magistrate Sally J. Berens

SUSANNE KNIGHT, et. al.

    Defendants.

_____/

FATHIREE ALI, #175762                JENNIFER A. FOSTER
In Pro Per                        Attorney for Defendants
Saginaw Corr Facility            P.O. Box 30217
9625 Pierce Rd.                  Lansing, MI  48909
Freeland, MI  48623

_____/

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    The Defendants asks this Court to grant summary judgment because of the absence of any constitutional violations. ECF 36, PgID.148-150. The fundamental flaw with Defendants argument, however, is that they all admit notice of Ali's religious beliefs, but did nothing to accommodate it. On the other hand, Defendants do accommodate the special needs of others, now, what is left is whether their decision to deny Ali's request is in fact unreasonable, without a legitimate penological interest and caused Mr. Ali a substantial burden on his sincerely held religious beliefs; and whether the methods used coerced Ali to forego his beliefs. The Court should deny the Defendants request for summary judgment.

    Moreover, a trier of fact could find that Classification Director Losinski, Food Service Director Torrey, along with Food Service Supervisors Knight and Pitts, without any legitimate penological interest substantially burden Mr. Ali's

free exercise rights by their conscious individual decisions to coerce, force and intimidate him to touch and serve foods that violate his sincerely held religious beliefs; while other similarly situated individuals remained unmarred. A jury could find that under these prison conditions Losinski, Torrey, Knight and Pitts, motivated by Ali's religious exercise and expressions, willfully retaliated with threats and permanent restrictions/sanctions so as to defile and force him to abandon and violate a central tenet of his belief.

Standard for Summary Judgment

Defendants bring their Motion for Summary Judgment pursuant to Federal rules of Civil Procedure 56(c).

Under, FRCP 56(c), Motion for Summary Judgment is granted only if the evidence indicates that no genuine issue of material facts exists. The sufficiency of the evidence is to be tested against a standard of proof that we control at trial. Anderson v Liberty Lobby, Inc. 477 US 242, 248 (1986). In disposing of a Motion for Summary Judgment, this Court must consider the evidence in the light most favorable to the non-moving party. Matsushita Elec. Ind. Co. v Zenith Radio Corp., 475 US 574 (1986); Burchett v Kiefer, 310 F3d 937, 941-42, 945 (6th Cir. 2002).

A Court's function is not to weigh the evidence and determine the truth of the matter as asserted, but determine whether there is a genuine issue for trial. The relevant inquiries is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. James Johnson v City of Ecorse, 137 F Supp 2d 866, 890; 2001 US Dist LEXIS 4462 (2001).

## COUNTER-STATEMENT OF FACTS

### 1.  Fathiree Ali's Religious Practice

2.

Since 1989, Fathiree Ali is a Muslim inmate committed to the MDOC and is currently confined at the Thumb Corr. Facility. [Fathiree Ali Affd. Exh A, at 2. As a a devout follower of the Islamic faith for over 35 yrs., Ali have not voluntarily missed any Friday Al-Jumu'ah prayers services or its secondary Ta'leem studies. [Id.].

Mr. Ali's faith requires him to eat halal foods. Id. at 6. Mr. Ali's faith requires him to enjoin all that is good and forbid what is evil. The basis of this legislation requires that Ali do not contribute to any matter which is ruled as forbidden. Id. at 4. Since Ali can not eat haram foods, he also can not give unlawful food to others for consumption or use. Id. at 4, 6, 7, 9.

Mr. Ali is not alone in his beliefs. In the Commentary of the Forty Hadith, religious scholars like Al-Imam Yahya bin Sharaf An-Nawawi [see Exh B] h] ve compiled teachings of the Messenger pbuh concerning the "Prohibition of Doing That Which Allaah and His Messenger have Prohibited." Sheikh An-Nawawi wrote that:

> Abu Hurairah said: The Prophet pbuh said, 'Allaah, the Exalted, becomes angry, and His Anger is provoked when a person does what Allaah has declared unlawful." [Al-Bukhari and Muslim]. [Id., Hadith No. 9]

A treatise by Ibn Rajab Al-Hanbali, The Compendium of Knowledge and Wisdom, provides a comprehensive explanation that forbid the sale of wine, maitah (dead meat not slaughter according to Islamic principals) pork and idols. The Compendium of Knowledge and Wisdom, Exh D, pgs. 717-718. In these matters, the Messenger pbuh also prohibited the use of forbidden foods. Id. Accordingly, forbidden foods are not to be given to others for consumption or use. Id.

Ali acknowledges that while the Defendants nor the MDOC may not share his belief not to touch or serve haram foods, the Defendants offer no evidence to doubt the sincerity of Ali's religious beliefs. In fact, in 2017, retired MDOC Chaplain Adamson admits that Ali is sincere in his belief. Ali Affd. at 42.

Not being able to not handle or serve unlawful foods to others is a

3.

commanding and integral part of Ali's ability to exercise his religion. Id. at 7.
A failure to fulfill this obligation is disobedience which leads to disbelief, and
disbelief leads to a deprivation, and an eternal unyielding severe and painful
punishment. Ali Affd. at 9.

   2.  MDOC policy, customs and practices.

   Under the MDOC Religious Beliefs and Practices policy, 05.03.150, religious
freedom is a constitutionally guaranteed right, with equal status and protection.
05.03.150, Exh E [1]. What more, it offers a vegan menu which complies "with Kosher
and Halal religious tenets." Id. at OO. While the policy do not define halal,
Michigan's law gives notice for an interpretation of halal. MCL 750.297f. Still,
under MDOC policy a prisoner approved to eat meals prepared from the religious
menu is not permitted to "either posses[] or consume[] food that violates a tenet
of his/her designated religion." [Id. at SS]. Violators are counseled, while
second offenders are terminated from the vegan menu. Id.

   The MDOC Classification policy, 05.01.100, requires that "all classification
decision take in consideration "institutional needs, [and] ... any special needs
of the prisoner." ECF 37-5, PgID.204. All prisoners are required to actively
participate in a work assignment or go to school, prisoners who refuse are placed
on Double "OO," until they agree to return to work at the assigned position. Id.
at 206.

   Based on the MDOC Religious Groups Handbook, Muslims are "not allowed to
touch anything made with pork, pork by-products or pork derivatives. Religious
Groups Handbook, Exh – pg. 6. The Handbook further denotes that meats which were
not "slaughtered in the prescribed manner" are forbidden under its "Dietary

_____

fn [1] Under FRE 201, this Court can take judicial notice of Mr. Ali's referenced
       public documents [PD 05.03.150, Religious Groups Handbook, pg. 6, PD
       03.03.130(I)(6) and PD 02.03.109(L)(CC) ]  contained on the MDOC website.

4.

Requirement" section, id. pg 9.

Finally, MDOC policies repudiate Knight, Pitts, Torrey and Losinski's retaliatory degrading and humiliating conduct against Ali's free exercise rights. PD 03.03.130(I)(6) directs that:

> staff shall not use or engage in, and shall discourage through appropriate means any person's use of derogatory, demeaning, humiliating, or degrading actions or language towards others. . . . Staff also are prohibited from retaliating against a prisoner who refuses to participate in prohibited staff conduct.

In the same way, PD 02.03.109, orders that:

> (L) "all employees are prohibited from engaging in discriminatory harassment."a grievant shall not be penalized in any way for filing a grievance . . . staff shall avoid any action that gives the appearance of reprisal for using the grievance process."

> (CC) Retaliatory action against anyone raising or filing a complaint of any type ... is strictly prohibited.

### 3. Genuine factual dispute into Defendant Losinski practices, customs and authority to orientate and classify new arrivals at Lakeland

Losinski alludes that her acts were based upon statutes, rule and policies governing the MDOC and did not violate Mr. Ali's constitutional rights. ECF 37-2, PgID.191, * 17, 18. Notably, even though policy requires consideration of a prisoner's special needs. ECF 37-5, PgID.204, ¶H, Losinski determined Ali's beliefs not important. Ali Affd. at 14. So, Losinski ignores Ali's free exercise rights and denies his special need accommodation.

According to Torrey, he referred Ali back to Losinski to "encourage him." ECF 37-6, PgID.215 at 7. But Losinski asserts that, Torrey referred Ali back to classification for refusal to sign orientation form, which could result in placement on "OO" status because refusing to sign orientation documentation is akin to refusing the work assignment" ECF 37-2, PgID.190 at 12-13. This dispute raised concerns because a prisoner can refuse his signature on a form under policy precepts. The evidence disputes Losinski implication at untrue, as it holds that:

5.

"appropriate staff shall ... witness the prisoner's signature, or refusal to provide a signature on the form." ECF 37-5, PgID.207 at §CC. Since the encouragement Torrey eludes are align with threats and disciplinary sanctions and penalties Losinski charged Ali -- on their second meeting -- if he did not work and do what Torrey and the FS supervisors told him to do, Torrey and Losinski's vindictive motive becomes clearer. It is reasonable to conclude that the actions, referrals, intent and threats to "OO" by Torrey and Losinski were motivated solely upon Ali's religious expression and exercise, intended to burden the exercise practices and retaliatory.

Losinski claims that she did not treat Mr. Ali differently than anyone else, ECF 37-2, PgID.190 at 16, and equally assigns prisoners into Food Service, Unit Porter, and Recreation Worker pools. [Id. at 189, *4].

But, many witnesses dispute Losinski's claimed job assignment practices, Double "OO" notices and special need accommodations regarding religious beliefs. For instance, Mr. Abby, Mr. Kelly, Mr. Carver, Muslims of the Moorish Science Temple of America faith, even though Losinski assigned them to work in food service, Losinski obliged their belief's "special need" not to serve unlawful foods and fit them with unit porter positions. Affidavits of Leo Abby, Opelton Kelly, and Larry Carver, Exhs: I, J, K. Likewise, FSS Knight and Pitts mindful of Mr. Washington, Nation of Islam Muslim beliefs made provisions to schedule his food service work duties around foods that violate his religious beliefs. [Affidavit of Gregory Washington, Exh: L. Donnie Bobo, avers that Losinski did not assign him to work food service for medical special needs. Affidavit of Donnie Bobo, Exh M. Losinski arranged for Bobo to work a recreation position. Id. Mr. Hoffman, Mr. Murphy and Mr. Blount, Muslims like Ali, informed Losinski, Knight, Pitts and Torrey about their religious beliefs restrictions to eat and serve only halal foods. Affidavit of Anthony Hoffman, Exh: N, at 4-6; Affidavit of Johnny

6.

Murphy, Exh: O, at 4; and Affidavit of Andrew Blount, Exh: P, at 6. Understanding, Losinski, Knight, Pitts and Torrey made adjustments for Mr. Murphy, Mr. Hoffman and Mr. Blount with work assignments which did not violate their sincerely held religious beliefs. Id. While Losinski, Torrey, Knight and Pitts did harmonize other prisoners beliefs, she did not accommodate Ali's religious observance to not serve haram foods. Ali Affd. at 18; Amd Compl. No. 30. Based on this revelation, there is a genuine factual about Torrey, Knight and Pitts' authority to grant or deny Ali's request, and whether others beliefs were honored.

All the witness acknowledge that Losinski did not give them an option to be assigned to positions other than food service, which they were required to work for six months. Affidavits, Askia, Tate, Hoffman, Bobo, Washington, Carver, Kelly, and Abby, Exhs I-R. According to all the witnesses Losinski did not tell them that they would be Double "OO" for refusal to work. Id.

The evidence further supports Ali contention that Losinski, Torrey, Knight and Pitts compulsion to work under threats with looming permanent sanctions and substantial force caused him to forego his religious beliefs [Amd. Compl, No. 30; Ali Affd., at 18. But, Losinski wants logic to behest her position that a prisoner's choice to not work under threats and consequences of restrictions is not forceful conduct. ECF 37-2, PgID.190, *11. Had not for fear of the dominant formidable reprisals of a permanent double "OO" and threats to write a misconduct, Ali would not have served any haram foods. Id., at 18. Losinski, Pitts, Knight and Torrey, told Ali that his belief permitted him to wear gloves while he handles and distributes foods which violate his religious beliefs. Amd. Compl, 30, PgID.194 at 21; Ali Affd. at 14, 20, 23, 31. Still, all the Defendant deny telling Ali that he could wearing gloves. There is a genuine factual dispute about the gloves, since the gloves were suitable for others sc as to would cure the religious impurities.

4. **The Defendants responses to Ali's expression barring servance of haram foods**

Each Defendant, Knight, Pitts, Losinski and Torrey admit that Ali told them that his religious beliefs prohibits his handling or serving unlawful foods. Each Defendant independently had an opportunity to employ his own individual common sense by: 1) not scheduling a work assignment that violate Ali's beliefs, 2) not issuing threats with potential disciplinary sanctions and permanent restriction, 3) not retaliating against Ali's free exercise expressions; 4) not suggesting that gloves would cure the religious violation. According to Ali, not until he told Losinski, Knight, Pitts, Torrey about his beliefs did they behave differently, acted hostile, give orders orders, made threats to write misconduct tickets, and Double "OO" lay-in, if Ali did not serve the unlawful foods. [Amd Compl, No. 30; Ali Affd.

Defendants FSD Torrey, Knight and Pitts allude that they do not have the authority to make decisions about work assignment or accommodations for religious beliefs. Torrey: 37-6, PgID.215 at 8;, Knight: 37-10, PgID.242 at 7; Pitts: 37-3, PgID.194 at 8. But, just as Ali and many witnesses dispute Torrey's denial of authority to accommodate, FSS Pitts likewise disputes Torrey's version. Pitts tells a different story claiming that FSD Torrey expressed a willingness to accommodate Ali's religious beliefs with a "station to serve foods that did not violate his beliefs." Id. at 7. So, a juror could reasonably conclude Torrey as untruthful, and willfully placed a substantial burden on Ali's religious practice. Further, Torrey motivated by Ali's religious exercise, retaliated when he forced him to serve haram foods, and substantially burden Ali free exercise rights.

This religious torture when on for nearly two months. At five days per week, 11 hrs. per day, -- ECF 37-4, PgID.201 -- Losinski, Torrey, Knight and Pitts defiled, humiliated, degraded, and shamed Ali by placing a substantially burden on his free exercise right, arbitrarily and capriciously ignoring a special need accommodations, even though other similar situated individuals were not violated.

8.

## ARGUMENT

**I.    The evidence demonstrates that Plaintiff did properly exhaust all claims against each Defendant as required under the PLRA.**

Under the PLRA, a plaintiff need only exhaust available administrative remedies. In this case, as recognized by the Defendants, Mr. Ali "filed his 'grievance on the claims presented through all available steps by the MDOC.' Id. PgID.161. But, while the Defendants' contend that "[n]owhere does the grievance claim that Defendants' action were retaliatory" Id., the evidence demonstrates otherwise. Notably, the grievance form shows that during the formal resolve process he did in fact address that he "not be further retaliate[d]." ECF No. 37-9, PgID.238.

Besides, the grievance also complains of retaliation, reprisals which did not occur until AFTER Plaintiff gave notice of the prohibitions about his belief's regulations. Upon this notice, the Defendants responded with an ultimatum, a potential threat that they:

> "would take disciplinary actions against him if he refused [their] orders to serve or handle haram food items." Id.

Defendants openly made known their evil/harassing intent of consequences, if plaintiff did not comply with their order. Since under the MDOC Prisoner Disciplinary Policy, PD 03.03.105, a failure to comply with a direct order will subject a prisoner to a misconduct and disciplinary actions, the statement was a real and deterring threat. "The mere potential threat of disciplinary sanction is sufficiently adverse action to support a claim of retaliation. Scott v Churchill, 377 F3d 565, 572 (6th Cir. 2004).

Thus, based on the evidence presented, the Defendants received sufficient notice of their reprisals for Plaintiff's exercise of his protected conduct. For these reasons, the Court should find Mr. Ali's claims exhausted.

**II.  Because Ali can still be victimized under MDOC policy, the RLUIPA claim is not moot; thus warranting declaratory and injunctive relief.**

In determining whether a case is moot, the United States Supreme Court explained that two doctrines applies where  (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. Spencer v Kemna, 523 US 1, 17 (1988). Also see Deakins v Monaghan 108 SCt 523 n4 (1988)(holding that the mere cessation of allegedly unlawful conduct does not make a case moot).

Likewise, the Sixth Circuit in Colvin v Caruso, 605 F3d 282, 295-96 (6th Cir. 2010), found that injunctive relief was not moot by a prisoner's transfer because the challenged kosher meal policy also applied to the plaintiff at the new prison.

In Michigan a case is moot if the issues sought to be litigated are capable of repetition, yet evade review. Moralaes v Mich Parole Bd., 260 Mich App 29, 32 (2003).

Here, Defendant Losinski admit in her affidavit that "according to policy (05.01.100), all able-bodied prisoners are required to have a work assignment. . . this pool is filtered into Food Service." ECF No. 37-2, PgID.188-189, Affidavit of Kristen Losinski.

Likewise, during Mr. Ali's deposition (which he has been denied notice of its existence by the Defendants' or accessibility to review and purchase) he admitted to being assigned to work in food service at other MDOC facilities, yet in those instances the supervisors did not force him to handle or serve haram foods.

Even though Mr. Ali is no longer confined at Lakeland, other MDOC prison which are bound by the same policy Defendant Losinski follows can assign Plaintiff

to work in food service and potentially order him to handle foods that violates his sincerely held religious beliefs. The harm -- or threatened harm -- has not been completely removed since the policy remains unchanged, and thus there is a reasonable expectation that Mr. Ali will be subject to the same government action. The Defendants' motion for summary judgment should be denied since the potential injury is not moot.

### III. The evidence demonstrates that Defendants' did violate Mr. Ali's Eighth Amendment right.

The Eighth Amendment bars cruel and unusual punishment. It is likewise unconstitutional to require prisoners to do work that is contrary to their religious beliefs. Franklin v Lockhart, 890 F2d 96-97 (8th Cir. 1989)(allegation that the plaintiff was required to handle manure and dead animals in violation of his Muslim beliefs stated a constitutional claim)

In the midst of Losinski, Knight, Pitts and Torrey's deprivation of Ali's free exercise rights, they placed Ali in work conditions of ultimate defilement, degradation and humiliation of his beliefs, and equally a violation of the Eighth Amendment.

### IV. The evidence sufficient demonstrate an Equal Protection claims against all Defendants.

Defendants violated Ali's rights under the Equal Protection Clause by refusing to accommodate work duties which did not violate his religious observance while providing similarly-situated Muslims with work duties that did not violate their beliefs. The facts are undisputed. No reasonable conclusion can be drawn that Defendants' discriminatory treatment is anything but intentional. Defendants articulate no other justification for this unequal treatment even after being informed. As such Defendants have intentionally discriminated against Mr. Ali in violation of the Equal Protection Clause.

First, as discussed earlier, the record evidence demonstrates that Losinski, though aware of the religious or medical restrictions, did not assign certain prisoners to work in food service. But, those prisoners she did assign to food service were assured that their religious beliefs would not be compromised.

Secondly, Knight, Pitts and Torrey falsely claim no involvement or control over prisoner request for religious accommodations. Again, there is clear evidence which shows a discriminatory practice about whether to accommodate Ali of his sincerely held religious beliefs.

Third, while Knight, Pitts, Torrey and Losinski claim to "never before had a prisoner claim they could not serve the food based on their religious beliefs [ECF No. 37-10, PgID.242], [ECF 37-6, PgID.215 *5], [ECF No. 37-3, PgID.194 *6], [ECF 37-2, PgID.190 *14], the real evidence clearly points otherwise. For example, under the MDOC policy prisoners like Hoffman who are approved for the vegan diet can not possess foods that violate his beliefs. And, agreeably Knight, Pitts and Torrey scheduled Hoffman, Washington work duties that did not violate their religious beliefs. In the same way, Knight, Pitts and Torrey approved work duties for Blount and Murphy so that they did not have to serve forbidden foods, Ali's request could have been easily approved.

As discussed in context with Ali's RLUIPA claims, Defendants have failed to show any compelling government interest to justify treating Ali differently that other similarly-situated Muslims. In fact, the Defendants have come with absolutely nothing to justify its disparate treatment. No matter whether strict scrutiny or rational basis are employed, Defendants' discrimination cannot stand. Defendants should be permanently enjoined from denying Ali rights afforded to other similarly-situated persons, and Defendant should be order to refrain from assigning Ali work duties which violate his religious beliefs.

12.

**V.    All Defendants unlawfully retaliate upon Ali's Free Exercise Rights when they threaten to issue him a misconduct and they used his religious exercise as a factor in forcing him to serve foods that his religious beliefs forbids**

There was clearly no reason for any of the Defendants to prevent Ali's religious exercise. The evidence demonstrates that Defendants Knight, Pitts, Losinski and Torrey reacted to Ali's religious observance with adverse actions while they knew it would violate his sincerely held religious beliefs.

In Thaddeux-X v Blatter, 175 F3d 378 (6th Cir. 1999) the Sixth Circuit set forth the following requirements to prove retaliation, facts this case supports.

**a.    Mr. Ali was engaged in a protected conduct.**

While the Defendants offer no opposing argument, Ali was engaged in a protected conduct. Amd Compl. ECF No. 30, PgID. --; Plaintiff Grievance, ECF No. 37-9, PgID.238; MDOC Prisoner Worker Safety Training Record, ECF No. 37-4, PgID.200; Ali Affd. at 13, 19, 23, 30.

Besides, all the Defendants did admit that they were informed by Ali that he could not fulfill their work orders due to his religious beliefs.  Still, Ali penned to the Defendants the limits of his belief. ECF 37-4, PgID.20u.

**b.    Evidence that each Defendant did personally take an adverse action to deter Ali from continuing to engage in protected conduct.**

It is undisputed case law that either a misconduct ticket or Double "OO" status can be sufficiently adverse to deter a prisoner from engaging in protect conduct. Thomas v Eby, 481 F3d 434, 441 (6th Cir. 2007); Hill v Lapin, 630 F3d 468, 474 (6th Cir. 2010)(actions that result in more restriction and fewer privileges for prisoners are considered adverse); Scott, 377 at 572 (the mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation); Smith v Yarrow, 78 F Appx 529, 542 (6th Cir. 2003)(threat to change drug test results is sufficiently an adverse action).

The Defendants would like this Court to believe that their actions were not

13.

forceful, but motivated by Ali's free will. They contend that their statement
about Double "OO" was a mere warning, and that Ali voluntarily "chose to work. ECF
37, PgID.178. At the very least, the Defendants' proposed Morton's Fork[2]
represents an impractical and unworkable framework, much less a framework
compelled by constitutional principles. More on point, is that the Defendants'
choice did overwhelm Ali's faith.  See Holt v Hobbs, 574 US 352, 356-57
(2015)(holding that the choice between growing a beard pursuant to plaintiff's
faith or facing serious disciplinary action was a substantial burden.

The circumstances of this case illustrate a factual question as to whether
Double "OO" constitutes an adverse act. This case is distinguished from the cases
Defendants cite. Conversely, Defendants fail to weigh the sincerity of Ali's
unyielding thirty-five year religious belief against the option that "signing off
a work assignment" and choosing "confinement to a cell" are far more egregious
than their claimed 30 day unemployable status and restriction. Granted,
05.01.100(FF), do allow an unemployable reclass every 30 days, but still, the
prisoner remains on unemployable status until he accepts the offered work
assignment. Unfortunately, this choice for a person like Ali hold greater
consequences. In fact, Ali would remain permanently on "OO" sanctions, until he
foregoes or modifies his beliefs to serve haram foods. Obviously, under these
circumstances "signing off" on a lifetime sanction is unconstitutional and
atypical.

Plainly, the Defendants threats of a misconduct ticket and permanent Double
"OO" independently or in concert, was not only a deterrence, but a pivoting cause

---

fn 2.  Archbiship of Canterbury, John Morton's infamous medieval fork is a choice
       between two equally unpleasant alternatives. It is a practical dilemma,
       especially one in which both of the choices or alternatives available
       disadvantage or discredit the chooser. In this case Ali's choices were: (1)
       settle for a misconduct and/or Double "OO", and (2) forego his sincerely
       held religious beliefs.

which dispensed his religious beliefs.

### c. The evidence shows there was a causal connection between Ali's religious exercise and threats of a misconduct and Double "OO"

But for Ali's protest about his beliefs, there are no reprisals or further discussions from Defendants. The casual connection is drawn from evidence that:

- Defendants told Ali that his beliefs do not matter;

- each time Ali made clear his willingness to work with suggestions to serve drinks, wipe tables or sweep the floor, the Defendants rebuffed Ali's religious obligations with threats of adverse actions;

- Defendants made rulings about the religion as to what Ali could and could not do;

- Defendants told Ali to practice his belief away from food service;

- Defendants suggested that Ali wear gloves; and that his belief allowed it;

- Defendants commented and pointed to other Muslims that Ali should emulate.

And still, the evidence that: Torrey acting like a grieved Mafia Capo returns Ali to classification so that Losinski could "encourage him", which could easily support a reasonable juror conclusion that Torrey contracted Losinski motivation skills to intimidate or harass Ali, shut him up about his beliefs, or get him on track like other Muslims they programmed or compromised.

Ali contends that Defendants' claim about a Double "OO" warning is pretextual. Simply because only after Ali expressed a willingness to work, exercised his beliefs and offered alternative suggestions aligned with his beliefs, did each Defendant display open hostility and were adamant that Ali serve foods that violate his beliefs or else choose the ticket and lifetime Double "OO." All the Defendants were motivated by their own personal vendettas against Ali because he dare question their authority. A plaintiff need not prove pretext, he need only to show the question of pretext is a genuine factual dispute. Provenzano v LCI Holdings, Inc. 663 F.3d 806, 813 (6th Cir. 2011).

15.

There is no doubt that these facts, coupled with threats of adverse actions creates a genuine factual dispute and were casually related to Ali's religious beliefs. Ali Affd. at 16, 20, 21, 24, 25, 28, 35, 37. See. Nguyen v City of Cleveland, 229 F3d 559, 563 (6th Cir. 2000). Having relied upon the tenets of his religious beliefs, a reasonable juror would likely find a causal connection between Ali's statement and Defendant's adverse actions against him.

### d. The evidence demonstrates that the Defendants actions were motivated in whole or in part, by Ali's protected conduct.

There is genuine factual dispute regarding whether the stated reason to place Ali on Double "OO" status was an actual warning or simply an exaggerated pretextual response. Notably, each Defendant took issue with Ali's expression of his belief, and refusal to relinquish it.

Torrey justification for Double "OO" misses his motive based on a personal vendetta against Ali because Ali dare question his authority. In fact, when Torrey learned that Ali did not sign his Safety Training Record, as told to do so, - but Ali instead wrote a complaint about the denial of his religious practice, Torrey got loud and gave Ali a direct order to leave. Ali Affd., at 32-33. Later, Torrey referred Ali back to classification to be "encouraged." or attacked by Losinski's adverse actions, his belief did not matter, and feckless attempts to get Ali to wear gloves. Id. at 34. After all that, Ali reports to work and Torry assails Ali with more hostile orders to serve the haram food because Ali's beliefs will not be practiced in food service. Id. at 35.

Similarly, Pitts' exaggerates here Double "OO" justification. Ali told Pitts orally and in writing that he was not refusing to work. Id. at 19. However, when Ali asks to serve drinks, sweep or roll up sporks, Pitts aggressively states that Ali should have thought more about making a big deal about his religious observance. Id. at 21. When Ali's challenges in face of Pitts change of heart

16.

about Ali not have to serve haram foods, agitated hurled threats to work, while pointing at a couple Muslims  on the serving line, and said: ""they are not complaining "evidence motive." Id. 21. Pitts held a personal vendetta against Ali because he too challenged her authority. Still, Pitts though approved by Torrey to assign Ali to "station .. that did not violate his belief", ECF 37-3, PgID.194 at 7, made sure accommodations were not met.

Moreover, the evidence in this case points to facts that reprisals and threats of a misconduct did not commence until Ali free exercise rights were conveyed to the Defendants. The Defendants motivated, at least in part, by Ali's beliefs attacked him adverse actions for his free exercise. Grievance, ECF No. 37-9, PgID.238; Fathiree Ali Deposition, Pg. ???; Ali Affd.

Both Knight and Losinski took issue to Ali's religious observance, inciting questions about why was he was not like others and targeted him because he did not act like the others Muslims. Id. 14, 23; and Ali's faith did not matter. Id. at 14. And similarly, took adverse actions when Ali expressed his free exercise right, and did not agree that the gloves would cure the violation.

The sum of this matter is that the threats by Defendants with adverse action as a rresult of the free exercise expression were unlawful. The Defendants pretext exaggerated responses should be rejected, since a juror find their actions motivated as a result of Ali's religious observance.

**VI. The record evidence demonstrates that under the Turner factors the Defendants did impose a substantial burden on Mr. Ali's religious practice, without any legitimate penological interest, thus violating the Free Exercise Clause.**

In this circuit, the analysis of whether a plaintiff's free exercise rights have been violated under the First Amendment is determined by a two-step inquiry: (1) whether plaintiff's religious beliefs are sincere and (2) whether the "challenged practice" infringes on the plaintiff's religious belief. Kent v

17.

Johnson, 821 F2d 1220, 1224-25 (6th Cir. 1987). In order to infringe on a prisoner's free exercise, the conduct must place a substantial burden on the religious belief so much that the burden "forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places 'substantial pressures on an adherent to modify his behavior and to violate his beliefs. Living Water Church of God v Charter Twp., 258 Fed Appx 729, 734 (6th Cir. 2007). See, Sherbert v Verner, 374 US 398, 404 (406 (1963); Thomas v Review Bd. of Ind. Emp't Sec Div, 450 US 707, 717-18 (1981).

Although the Defendants put forth no argument, there is clear evidence that points to the sincerity of Ali's religious beliefs. Ali Affd. at 2-9, 42.

Next, it is undisputed that under Ali's belief he can not serve foods deemed haram to others for consumption or use. Ali Affd. at 5-9; Sheikh Ibn Rajab Al-Hanbali, Exh D. A prisoner has a right to abstain from conduct that directly violates his religious beliefs. United States v Lanier, 520 US 259, 271 (1997). Again, the evidence points to each Defendant individual participation in conduct which coerced and forced Ali to substantially burden his belief by serving foods forbidden by his sincerely held religious beliefs. Ali Affd., at Ali Affd. at 16, 20, 21, 24, 28, 35. See Holt v Hobbs, supra, at 356-57. The Free Exercise Clause "protects against indirect coercion or penalties on the free exercise of religion." Dahl v Bd. of Trs of Western Mich Univ., 15 F.4th 728 (6th Cir. 2007)

Just as in Jones v Williams, 791 F3d 1023, (9th Cir. 2015), prison officials threaten to issue a Muslim inmate daily performance failure or possibly a misconduct report if he refused the order to serve pork. The plaintiff prepared the pork loins as ordered. The court held that the prison officials conduct violated plaintiff's clearly established right to avoid handling pork on the basis of his religious beliefs, and were not entitled to qualified immunity.

Indeed, Ali has established a prima facie case under the Free Exercise

Clause in demonstrating that the Defendants' coercion -- through threats and reprisals of disciplinary actions -- as well as serving forbidden foods imposes more than an inconvenience, but a substantial burden on his exercise of religion.

Now, in determining whether a prison regulation is related to a legitimate penological interest, a claim is examined under the four factors established in Turner v Safley, 482 US 78 (1985). The factors are met here.

## 1) Whether regulation is rationally related to legitimate and neural objective.

In this case, the Defendants have wholly failed to satisfy this first Turner factor. Of course, ordering plaintiff to serve haram food against his belief, like Ali, had no legitimate penological interest, but was applied irrationally, arbitrarily, discriminatively, illegitimately, and not neutral, contrary to Turner.

Under MDOC policy, special needs is a required before determining a job assignment. ECF 37-5, PgID.204 §F. The Religious Policy prohibits vegan meal participants from possessing foods that violated their beliefs. The holding in Dowdy-El v Caruso, supra, recognizes a Muslims' right to a halal diet. And yet, accommodations are permitted to other Muslims. So, neither the prison or the Defendants were applying these regulations neutrally to Ali.

Here, the evidence is clear that under the first Turner factor Defendants have failed to demonstrate the regulations they assert, and the ordering of Ali to handle and serve haram food was not rationally related to any legitimate penological objectives and is sin qua non, and was applied to Ali arbitrarily, irrationally, in a non-neutral manner, thus making the other three Turner factors unnecessary.

## 2) Whether the alternative avenues remained open for exercising free exercise right.

Should this court consider the second Turner factor, whether there are

alternative avenue that remain opened to plaintiff exercise of his right, this
factor heavily favors Mr. Ali, based on US v Lanier, 520 US 259, 271
(1997)(plaintiff has a right to abstain from conduct directly violative of his
religious beliefs).

The Defendants point to not evidence of alternative avenue remaining open to
Ali. In fact, they can not, because:

> "the distinction between a religious practice which is a positive expression
> of belief and a religious commandment which the believer may not violate at
> peril of loss to his soul. It is one thing to curtail various ways of
> expressing belief, for which alternatives ways of expressing belief may be
> found. It is another thing to require a believer to defile himself, according
> to the believer's conscience, by doing something that is completely forbidden
> by the believer's religion." Ward v Walsh, 1 F.3d 873, 878 (9th Cir. 1993).

### 3) Impact that accommodating the asserted right have on guards, prisoners and allocation of prison resources.

The Defendants suggest that their classification system provides equal
treatment and neutral treatment. FCF 37, PgID.167. But, other evidence illustrate
otherwise based on: 1) unit officer's assignment favors, Kelly Affd., at 6; Caver
Affd., at 8; or 2) medical reasons, Bobo Affd. at, 5; or 3) arbitrary actions,
Abby Affd. at 4. Losinski follows no set rule for classification efficiency.

To satisfy their burden during summary judgment, the Defendants must put
forth sufficiently specific facts to show the actual impact on prison operations,
in order to demonstrate that no triable issue of fact exists regarding
accommodating plaintiff would have more than a de minimis impact on the prison's
food operation. Ward, 1 F.3d at 878-79.

Here, Defendant have not put forth any evidence from which to weigh this
factor. The Defendants make no attempt to estimate their magnitude in relation to
Ali's religious claims. Defendant must provide the court with enough factual
specificity to support their claim to assert legitimate governmental interest. In
this case, there is no offer of "specific findings" as to whether to accommodate

20.

Ali's request, not to serve haram foods, would have any impact on guards or other inmates, or how it would disrupt the allocation of prison resources. Thus, the balance is too close for summary judgment to be proper.

### 4) Absence of ready alternative of reasonableness of the regulation.

In analyzing this fourth factor courts have held if a inmate puts forth an alternative that accommodates his constitutional rights at de minimis cost to the penological interest, "a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." <u>Turner</u>, 482 US t 91.

Just as the evidence in this case reflects, Ali could serve drinks, sweep the floor, roll-up sporks or wipe down tables. Ali Affd. at 21, 28; Blount Affd. at 7. Cut up vegetables. Murphy Affd. at 7; or prepare religious meals, Blount Affd. at 7; or any of the other institutional job pools Losinski assigned other prisoners like Bobo, Abby and Caver. The Defendants can not refute this evidence. In fact, Losinski denies that every prisoner has to work food service; thus an alternative exist.

In short, the Defendants have failed to establish under <u>Turner</u> that requiring Mr. Ali to serve haram foods was rationally related to a legitimate penological interest, and did in fact violate Mr. Ali's First Amendment right of free exercise of religion.

### B. The undisputed evidence establish a violation of Mr. Ali's religious rights under RLUIPA.

RLUIPA is clear on its face: No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution unless the burden furthers a "compelling government interest" and does so by "the least restrictive means." 42 USC §2000cc-1(a).

RLUIPA is not limited to religious practices mandated by the faiths' doctrine. See Williams v Bitner, 359 FS 2d 370, 375-76 (M.D. Pa 2005)(for purpose

21.

of the RLUIPA, it matters not whether the inmate's religious belief is shared by
tens or tens of millions. All that matters is whether the inmate is sincere in his
or hers own views").

Mr. Ali desires to refrain from serving haram foods as part of his job
duties because it is a form of exercising his religion. See Willaims 455 F3d at
186; and Jones, 791 F.3d at 1023. As such, it is an act protected under RLUIPA
regardless of whether it is a mandatory or optional practice of Islam.

While the evidence do support Ali's sincerity held beliefs, it is also
undisputed that Ali's belief that he must refrain from use, consumption or serving
haram foods is sincerely held. Whether religious beliefs are sincerely held is a
question of fact.

There is also no question that the Defendants' policies and practices of
forcing Ali to modify or forego his religious beliefs constitutes a substantial
burden on his ability to engage in the religious exercise of refraining from use,
consumption or serving haram food under RLUIPA. See, Living Water Church of God,
258 F.Appx at 734. The U.S. Supreme Court has found a substantial burden where the
state "denies [an important benefit] because of conduct mandated by religious
belief, thereby putting substantial pressure on an adherent to modify his behavior
and to violate his beliefs." Thomas v Review Bd. of Ind. Employment Sec. Div., 450
US 707, 717-718 (1981). Here, the Defendants' refusal to provide Ali with a job
assignment so as to not serve haram foods not only put substantial pressures on
Ali to modify his behavior, but actually forces him to forgo his sincerely
religious beliefs by under fear of disciplinary sanctions and permanent
restrictions.

Ali has established a prima facie case under RLUIPA in demonstrating that
the Defendants' denial of an assignment which does not violate his beliefs and
compulsion to serve haram foods imposes a substantial burden on his exercise of

22.

religion. The burden then shifts to the government to prove the existence of a compelling government interest and least restrictive means. The government cannot do so.

    **VI.** Because the evidence demonstrates that the Defendants' conduct violate the Constitution, and that the law was clearly established, Defendants are not entitled to qualified immunity.

The Supreme Court in Saucier v Katz, 533 US 194, 201 (2001) maintains a two step analysis in determining whether defendants are shielded with qualified immunity for their conduct to be in violation of plaintiff's constitution and statutory rights.

Defendant claim entitlement to qualified immunity on the ground that there was no violation, and that the violation was not so "clearly established." This argument should be rejected for several reasons. First, courts within this jurisdiction have held that Muslim inmates are entitled to a halal diet. Dowdy-El v Caruso, 2013 US Dist LEXIS 188171 (prison's failure to provide observant inmates a halal diet would substantially burden their religious exercise). The Sixth Circuit panel held in Alexander v Carrick, 31 F3d F. Appx 176, 177 (6th Cir 2002) that a prisoner has a right to be provided with food that satisfies the dietary laws of his religion under the free exercise clause of the First Amendment and RLUIPA. Naturally it follows that dietary restriction for one consumption is not handled, nor passed on to others for consumption. This reasonableness is observed under the "objective legal reasonableness analysis the Supreme Court established. Anderson v Creighton, 483 US 635, 640 (1987). Thus, the Defendants in this case understood that what they were doing violate Ali's rights. See Williams v Pitner, 455 F3d 186 (3rd Cir. 2006)(clearly established that Muslim inmates had the right to avoid contact with pork or with any food that has been contaminated by pork; a reasonable person would have been aware of this right and would have known that handling pork in the kitchen violated this right; no immunity; holding "the

23.

unlawfulness of the act must be reasonably apparent in light of pre-existing law." (citing Anderson, at 640).

Second, in Williams v Bitner, 455 F3d 186 (3rd Cir. 2006), the Third Circuit Court Appeals upheld the district court finding that the inmate had offered sufficient evidence to establish a deprivation of his rights under RLUIPA and the First Amendment Free Exercise Clause.

At least as early as 2015, the Sixth Circuit maintains that "ordering a Muslim prisoner-cook to handle pork may violate the Free Exercise Clause. Welch v Spaulding, 627 F Appx 479, 485 (6th Cir. 2015). The Ninth Circuit has long settled that requiring a believer to defile himself by doing something completely forbidden by his religion is both different from and far more serious than curtailing the expression of beliefs for which there are alternative expressions. Ashelman v Wawrzasaek, 111 F3d 674, 677 (9th Cir. 1997). This Court should adopt the Ninth Circuit approach.

While, there is no direct precedential case authority within the Sixth Circuit giving guidance to this court in determining: 1) whether prison officials substantially burdens prisoners like Ali by compelling him to handle and serve haram foods which violate his religious observance; and 2) whether defendants are to be afforded qualified immunity, the law in this Circuit is settled, "clearly established law need not exist." The Defendants know that their actions were wrong.

Besides, even under defendants' own policy and Religious Handbook, at the relevant times the violations took place, Ali was to eat halal food, not touch pork, consume pork and its by-products. Religious Handbook, pg. 6, 9, Exh F. Moreover, prison regulations prevent prisoners approved for vegan meals from possession or consumption of foods which violate their beliefs. See PD 05.03.150(SS), Exh E. In the same way, the regulations require prison staff to consider a prisoner's special need when determining job assignments.

24.

Consequently, defendants are not to be granted qualified immunity.

## VII.  The evidence demonstrates that the Defendants' conduct violate the Michigan's Constitution, and they are not entitled to qualified immunity.

Based strictly on the text of the Michigan Constitution, this case demonstrates state constitutional claims under the First, Eighth and Fourteenth Amendments. Michigan's Constitution mirrors the same protection with that provided by the Federal Constitution. Naturally, Ali is in compliance with the state standards, and his claims must proceed forth as a matter of law. See, Kubik v Brown, 979 FS 539, 557 (W.D. Mich 1997); People v DeJonge, 442 Mich 266, 273 n.9 (1993)(free exercise); Doe v Dept of Social Service, 439 Mich 650 (1992)(equal protection).

As previously discussed, the evidence demonstrates that the Defendant denials of Ali's accommodation was motivated by his religious beliefs. Further, the Defendants cannot point to any legitimate penological interest for having to compel Ali to work under conditions that forego or modify his sincerely held religious beliefs in violation of his free exercise rights. See, Lyng v Northwestern Indian Cemetery Protective Ass'n, 485 US 439, 449 (1988).

Because the Defendants conduct have substantially burden Ali's free exercise right, it complies with the state and federal denial on any immunity claim as a matter of law.

### CONCLUSION

The Defendants' consciously and intentionally interfered with Ali's free exercise, equal protection and First and Eighth Amendments rights. Thus, based on the foregoing reasons, Mr. Ali respectfully request that the Court denies Defendants' Motion for Summary Judgment on all issues.

Respectfully submitted,

FATHIREE ALI

July 12, 2024

25.

VERIFICATION

    Plaintiff Fathiree Ali, pursuant to 28 USC §1746, verify under the penalty of perjury that the facts stated herein are true and correct.

DATED: July 12, 2024

                                      FATHIREE ALI

CERTIFICATE OF SERVICE

    Plaintiff Fathiree Ali, declare under the penalty of perjury that the foregoing is true and correct, that on the 12th day of July 2024, he handed to the prison counselor an original copy of:  PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with/Exhibits and VERIFICATION to be mailed to Jennifer A. Foster, AAG, at P.O. Box 30217, Lansing, MI 48909.

DATED: July 12, 2024

                                        FATHIREE ALI



FATHIREE ALI, #175762
Thumb Corr. Facility
3225 John Conley Dr.
Lapeer, MI 48446

Office of the Clerk
United States District Court
107 Federal Bldg.
410 W. Michigan Ave.
Kalamazoo, MI 49007