UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATHIREE ALI #175762,

Plaintiff,

v

SUSAN KNIGHT, CHERYL PITTS, GREGORY TORREY, KIRSTEN LOSINSKI, and HEIDI WASHINGTON,

Defendants.

NO. 1:22-cv-287

HON. JANET T. NEFF

MAGISTRATE JUDGE SALLY J. BERENS

Fathiree Ali #175762
*In Pro Per*
Thumb Correctional Facility
3225 John Conley Drive
Lapeer, MI 48446

Jennifer A. Foster (P75947)
Assistant Attorney General
Attorney for Defendants
Michigan Dept. of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
Fosterj15@michigan.gov

/

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants do not believe Plaintiff has met the burden to overcome the properly supported motion for summary judgment, and Defendants' motion should be granted. (Defs.' Mot. & Br. Summ. J., ECF No. 36–37, PageID.148–184.)

## I. Plaintiff still did not exhaust his administrative remedies.

Plaintiff does not dispute that his grievance failed to mention Defendant Director Washington. (Pl.'s Resp. ECF No. 46, PageID.304.) "Based on this record,

plaintiff did not exhaust a grievance against defendant Washington regarding his claim in this lawsuit" *Churn v. Washington*, No. 1:21-cv-631, 2024 U.S. Dist. LEXIS 84454, at *8 (W.D. Mich. Apr. 11, 2024), and this motion for summary judgment should be granted as to Defendant Washington for failure to exhaust.

As to the retaliation claim, policy requires a grievant "attempt to resolve the issue with the staff member involved" prior to filing the grievance. (Defs.' Br. Summ. J., Ex. ECF No. 37-8, ¶ P, PageID.230.) The grievant must then set forth "who, what, when, where, why, how" with the "[d]ates, times, places, and names of all those involved in the issue being grieved." (*Id.*, ¶ R, PageID.231.) Thus, grievances are broken into two sections, the first asks "[w]hat attempt did you make to resolve this issue prior to writing this grievance? On what date?" (*Id.*, 37-9, PageID.238.) The next section says to "[s]tate problem clearly." (*Id.*) In that section, Plaintiff claimed he "told Food Serve Mgrs. Torrey and Pitss, and Classification Director Losinski" about his religious beliefs. (*Id.*) "They then told [Plaintiff] that the prison would take disciplinary actions against him if he refused orders to serve or handle haram food items." (*Id.*) "On 12/21/18 FS Knight assigned Ali to serve on the food service line." (*Id.*) "Knight ordered Ali to serve a meat based gravy." (*Id.*) He does complain, without details, that the "parties" were "forceful and coercive"; but if Defendants actions were as egregious as Plaintiff says, that would have been included in the grievance for inhumane treatment, or in the complaint, but it was not. Plaintiff's grievance complained about the "right to free exercise of religion", "cruel and unusual punishment and . . . the Equal protection clause, state and

federal laws." (*Id.*) "[A] grievance must be measured against the claim brought in the prisoner's subsequent suit." *Bell v. Konteh*, 450, F.3d 651, 654 (6th Cir. 2006).

Plaintiff's response, and his declaration, attempt to add in details that have never been presented to the MDOC and have never been addressed; and careful review of Plaintiff's grievance, shows he did not set forth any retaliation claim against any of the Defendants. (Defs.' Br. Summ. J., Ex. ECF No. 37-9, PageID.238.) It is also evident that Plaintiff was interviewed as part of this grievance, and those responding, did not view retaliation as the grieved issue. (*Id.*, PageID.239.)

Plaintiff did not exhaust a retaliation claim, and Defendants' motion for summary judgment should be granted.

## II. Plaintiff's claims under RLUIPA and official capacity claims with requests for injunctive relief are still moot.

Plaintiff alleges that his RLUIPA claims and injunctive relief are not moot because he could be assigned to work in food service again at another facility. (Pl.'s Resp., ECF No. 46, PageID.305–306.) But Plaintiff has very clearly stated, other facilities "did not force him to handle or serve haram foods." (*Id.*, PageID.305.) As Defendants' set forth, any injunctive relief granted under the PLRA, must be narrowly tailored to only address constitutional violations. (Defs.' Br. Summ. J., ECF No. 37, PageID.164–165.) Employees at other facilities that are not found liable for violating Plaintiff's rights, cannot be enjoined. (*Id.*) Plaintiff did not challenge the agency policy; his complaint alleged the Defendants' "incorrect interpretation of" policy violated his rights. (Am. Compl., ECF No. 30, PageID.125.) If only these

Defendants acted, that is not grounds to issue an injunction on anyone else at any other facility.

Most importantly, it turns out that Plaintiff already has the injunctive relief he seeks. As of August 2022, Plaintiff obtained a medical restriction preventing him from being assigned to Food Service in the future; the "[r]estriction is permanent." (Ex. A, Pl.'s Restriction.) Even though the general rule prohibits "new" arguments within a reply brief, this is not a new argument. New exhibits, including affidavits, are permissible if they are necessary to rebut arguments or evidence introduced in the opposing party's response brief. *Matthews v. Wells Fargo Bank*, 536 F. App'x 577, 579 (6th Cir. 2013). Plaintiff can no longer be assigned to food service by any facility any time in the future. Whether because Plaintiff is no longer confined at the only facility where he claims officials violated his rights, or because he has already obtained the relief he seeks, Plaintiff's RLUIPA claims and request for injunctive or declaratory relief, are moot. (Defs.' Br. Summ. J., ECF No. 37, PageID.162–165.)

## III. Plaintiff's amended complaint still does not address an Eighth Amendment violation.

Plaintiff's amended complaint labeled six causes of action. The first was RLUIPA. (Am. Compl., ECF No. 30, PageID.127.) The second was free exercise (*id.*, PageID.129), third, retaliation, (*id.*, PageID.129), fourth, equal protection (*id.*, PageID.130), fifth, Michigan State Constitution (*id.*, PageID.131) and, although not actually a cause of action, sixth, declaratory judgment. Plaintiff did not set forth an Eighth Amendment claim, and mentioning the constitutional provision, is insufficient. (Defs.' Br. Summ. J., ECF No. 37, PageID.165–166.) It is likewise

insufficient to set forth the matter in response to the motion for summary judgment because "Plaintiff may not amend his complaint by asserting new facts in his response brief." *Ali #175762 v. Simmons*, No. 1:19-CV-126, 2021 WL 5019650, at *8 (W.D. Mich. Aug. 4, 2021). Furthermore, the Court may not "construct the Plaintiff's legal arguments for him." *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009).

Because Plaintiff did not set forth an Eighth Amendment violation in his amended complaint, any claim set forth in the responsive brief, should be disregarded, and the motion for summary judgment should be granted.

## IV. Plaintiff's equal protection claim still fails.

Plaintiff has failed to establish that he was similarly situated in every material respect to those who obtained a benefit that he was denied. In support of his claim that other prisoners allegedly arrived at Lakeland and received special accommodations without any logical rationale for the difference, Plaintiff submitted numerous declarations. (Pl.'s Resp., ECF No. 46, PageID.345–367[1][2].) Apparently,

---

[1] Declarations for Murphy and Blount were not included. (Pl.'s Resp., ECF No. 46, PageID.362–363.)

[2] As Defendants were filing this reply, the missing declarations for Murphy and Blount were docketed August 1, 2024. (Decl., 49-1–49-2, PageID.380–385) Defendants have not yet received these in the mail. Both are dated July 14, 2024. Mailed with stamps from outside the prison and postmarked July 30, 2024. (Envelope, ECF No. 49, PageID.379.) Defendants do not have time remaining to check on these two prisoners, however, both mention prisoners who were "approved for the vegan menu did not have to work the main line." (*Id.*, 49-1, ¶ 12, PageID.382; 49-2, ¶ 12, PageID.385.) Even if this is true, that means these prisoners were not similarly situated to Plaintiff.

these declarations are things that "Defendants can not refute[.]" (*Id.*, PageID.316.) Plaintiff is mistaken.

Defendant Losinski was not the Classifications Director at Lakeland until December 2018. (Ex. B, Decl. Losinski, ¶ 4.) Any declarations claiming Defendant Losinski classified them or accommodated them prior to December 2018, are not accurate. That includes Leo Abby (Pl.'s Resp., ECF No. 46-6, PageID.346), Larry Caver (*id.*, PageID.351), Anthony Hoffman (*id.*, PageID.360), and Monya Tate. (*Id.*, PageID.367.) Although "Donnie Bobo #186601, claims [Losinski] classified him in fall of 2018, he is also mistaken. Bobo did not arrive at Lakeland (LCF) until February 21, 2019. He was classified by [Losinski] in February 2019." (Ex. B, Decl. Losinski, ¶ 5.) Unlike Plaintiff, Bobo's restriction was identified by health care as "temporary", but health care did not clear Bobo for work in food service, and he was placed into the other institutional needs work pools. (*Id.*, ¶ 6; Ex. C, Bobo Rec'ds.) Bobo got assigned in July 2019. (*Id.*) Washington actually wanted to work in the kitchen, and based on his specialized training, received high priority placement for a kitchen assignment. (Ex. B, Decl. Losinski, ¶ 7; Ex. D, Washington Rec'ds.) Specific placement based on specialized training is consistent with MDOC policy that recognizes the importance of placing prisoners according to their "related experience or training. If an appropriate work assignment or program vacancy does not exist at the time of the initial classification, the prisoner shall be placed on a waiting list (i.e., 'pool') for the assignment or program." (Defs.' Br. Summ. J., Ex. D, ¶ I, ECF No. 37-5, PageID.204.) Washington still had to wait for a spot to open in the kitchen, and after arriving in March 2019, he sent a kite in July, saying he had been the "Lead

Baker" at a prior facility, had no tickets, and wanted to know whether his name was "coming up on the list or the reason why [he was] not on the list." (Ex. D, Washington Rec'ds.) Defendant Losinski responded that he was on the list. (*Id.*) "Institutional needs at the facility are fluid and people were assigned to institutional needs as was necessary." (Ex. B, Decl. Losinski, ¶ 14.)

Opelton Kelly claims Defendant Losinski classified him in August 2020 and assured him his religious beliefs would not be a problem. (Pl.'s Resp., ECF No. 46-7, ¶ 3–5.) However, Kelly was not classified in August 2020, he was classified September 3, 2020 (Ex. E, Kelly Rec'ds); and at that time, Defendant Losinski had spent the prior year working as the Acting Administrative Assistant. (Ex. B, Decl. Losinski, ¶ 8.) "During that time, Patrick Daniels was the acting Classification Director and Patrick Daniels is the one who classified Opelton Kelly." (*Id.*, ¶ 9; Ex. E, Kelly Rec'ds.) Kelly was "[p]laced into Institutional needs *pools*." (*Id.*) (emphasis added.) The final declaration to review, is that of "Thomas Askia." (Pl.'s Resp., ECF No. 46-14, PageID.365.) Defendant Losinski was not able to confirm information about this prisoner because his declaration does not have a prisoner ID number, and this name is not coming up within the MDOC system. (Ex. B, Decl. Losinski, ¶ 10; Ex. F, OTIS Rec'ds.) Regardless, the time frame referenced is August 2020, and at that time, Defendant Losinski was not acting as the Classifications Director, Patrick Daniels was acting; thus, Losinski did not classify Askia. (Ex. B, Decl. Losinski, ¶ 8–9.)

Beyond all that, hearsay statements are also not permissible when considering a motion for summary judgment, *Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1008 (6th Cir. 2017); and to the degree any affidavit references things other prisoners said or did, that information is hearsay. (Pl.'s Resp., ECF No. 46-8, ¶ 8, PageID.352; 46-9, ¶ 5, PageID.354; ECF No. 46-10, ¶ 4, PageID.357.) The affidavits Plaintiff submitted swear under penalty of perjury to statements that are verifiably false, and these affidavits cannot create a genuine issue of material fact for trial.

Although Defendant Losinski did not classify Hoffman (Ex. B, Decl. Losinski, ¶ 4), Hoffman claims that he also told Defendants Knight, Pitts, Torrey, and others about his religious beliefs, and Defendant Torrey allegedly told him that "prisoners on the vegan menu are not assigned positions where they handle foods that violated their beliefs." (Pl.'s Resp., ECF No. 46-11, ¶ 6, PageID.361.) This statement still does not show that Plaintiff was similarly situated in every material way to Hoffman, because even if this statement is true, Plaintiff was not on the vegan menu. *Ali v. Adamson*, No. 1:21-cv-71, 2024 U.S. Dist. LEXIS 112115, at *2 (W.D. Mich. May 31, 2024). He documented his long-time beliefs in his response and cited a finding by Chaplain Adamson. (Pl.'s Resp., ECF No. 46-2, ¶ 42, PageID.333–334.) But in response to Adamson's investigation in 2017 (*id.*), Plaintiff's request for a religious meal accommodation was denied. *Ali v. Adamson*, No. 1:21-cv-71, 2023 U.S. Dist. LEXIS 234310, at *2 (W.D. Mich. Dec. 12, 2023). It is true that Adamson believed Plaintiff was sincere, *id.*, at *6 (Pl.'s Resp., ECF No. 46-2, ¶ 42, PageID.333–334), but Adamson was not the decisionmaker. *Ali*, No. 1:21-cv-71, 2023 U.S. Dist. LEXIS

234310 at *6. The request for religious meals was denied based on Plaintiff's store purchases. *Id.*, at *7.

When it comes to equal protection claims, Plaintiff must show that he was "similarly situated in all material respects." (Defs.' Br. Summ. J., ECF No. 37, PageID.166–167.) To be similarly situated, Plaintiff "must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). If Torrey did make the statement to Hoffman, then two things are true; Torrey attributed the difference to MDOC policy (Pl.'s Resp., ECF No. 46-11, ¶ 6, PageID.361), and Hoffman was on a specialized vegan menu (*id.*), while Plaintiff was not. Plaintiff cannot establish an equal protection violation against any named Defendant, and Defendants' motion for summary judgment should be granted.

## V. Plaintiff cannot create a genuine issue of material fact by submitting an affidavit that contradicts his prior sworn testimony.

Defendants previously argued that Plaintiff could not establish a retaliation claim or a First Amendment free exercise claim. (Defs.' Br. Summ. J., ECF No. 37, PageID.169–178.) In response, Plaintiff submitted an affidavit that is only a few pages shorter than his amended complaint. (Pl.'s Resp., ECF No. 325–334.) While Plaintiff is allowed to submit an affidavit in response to Defendants' motion, "[a] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.

1986); *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 906 (6th Cir. 2006). Yet, that is substantially what Plaintiff's declaration does as it relates to allegations against each Defendant.[3]

Plaintiff's declaration makes detailed claims about each Defendant with alleged quotes and behavior that were not included in the complaint, or at the time of his deposition, and in some cases, completely contrary to his deposition testimony. The aggressive conversation alleged from Defendant Losinski, was not present during his deposition. (Ex. G, Dep. Trans., 15:2–16:15; 47:1–50:25.) Plaintiff claims Pitts made comments about him "making a big problem out of this religious stuff" during orientation, and how Torrey threw papers and ordered him to leave, while neither of them counseled him about Double OO status. (Pl.'s Resp., ECF No. 46-2, ¶ 20, PageID.329.) But those quotes and actions were not mentioned during the deposition, and in fact, Plaintiff testified that during orientation when Pitts went to get Torrey, "[h]e said there would be – you're going to be double O'd, and you're going to receive a misconduct ticket for refusing to work." (Ex. G, Dep. Trans., 34:15–17.) "Pitts also gave me the warning about refusing to work[.]" (*Id.*, 34:19; see also 47:1–50:25.) Plaintiff testified that when he went back to speak with Losinski, she said, "'Your job assignment says that you will work where needed, if they will -- if they wish to accommodate you, okay,' you know, with not placing you in a -- the haram food situation. 'However, if they don't, you still have to comply with the order, and if

[3] Without giving the Court the entire deposition, and having the Court go line by line through the complaint, the deposition, and the declaration, it is difficult to address every minor detail in this reply.

you don't comply you will be given a misconduct ticket, you will be double O'd, and then you will be on sanctions.'" (*Id.*, 35:10–16.) After that, Plaintiff "chose the work in the kitchen[.]" (*Id.*, 36:21–22.) There was no mention during the deposition about an aggressive discriminatory rant (Pl.'s Resp., ECF No. 46-2, ¶ 12, PageID.328), or telling Plaintiff he was making a big deal out of his religion. (*Id.*, ¶ 14.)

Plaintiff says after the second encounter with Losinski, he received his call out to the kitchen; and when he arrived, Knight assigned him to roll sporks, and then when breakfast started, she ordered him to the food line. (*Id.*, ¶ 22–23, PageID.330.) When he informed her that he could not serve there, she allegedly went and talked with Torrey who came out yelling, "you've been repeatedly warned, and given direct orders to work", and Knight also said Plaintiff "made a big issue about" his religious beliefs. (*Id.*, ¶ 24, PageID.330–331.) Apparently, this was a huge blowup between Knight, Torrey, and Plaintiff "in front of everyone in the chow hall", and then Torrey said, "I am through with your shit, you have been given direct orders. Your religion is to be practiced in your cell, but you won't do it here." (*Id.*, ¶ 25, PageID.331.) Then Plaintiff went and served the breakfast. (*Id.*, ¶ 27.) Yet Plaintiff testified that when he arrived to work, they had him start making toast in the morning, and he made toast until there were "15 or 20 pans of toast", then "when they sta[r]ted serving the general population", he was moved to the line. (Ex. G, Dep. Trans., 36:22–37:6, 11–20.) But Plaintiff did not testify about this public argument, yelling, or swearing because "Torrey had not came in yet" and "Pitts work in the afternoon for some reason." (*Id.*, 38:1–6; see also 47:1–50:25.)

Plaintiff's declaration makes detailed quotes by Defendants, even though he never mentioned these threats and arguments in his complaint, during his deposition, or for that matter, in any grievance. The only purpose behind this affidavit is to attempt to manufacture a retaliation claim and create a genuine issue of material fact regarding his first amendment claim, by contradicting Defendants' motion for summary judgment. Consequently, Plaintiff has also contradicted his own testimony. "[T]he sham affidavit doctrine [applies] against a party who attempts to avoid summary judgment by filing his own affidavit that directly contradicts his own prior sworn testimony" *France v. Lucas*, 836 F.3d 612, 622-23 (6th Cir. 2016), and cannot create a material fact for trial.

Additionally, Plaintiff now repeatedly claims that Double OO status is a "permanent sanction" (Pl.'s Resp., ECF No. 46, PageID.302, 303, 309, 317), but he has never made that claim before. In his complaint, he said it was for a "minimum of 90 days" (Am. Compl., ECF No. 30, PageID.124), and although mistaken, he recognized it was not permanent. (*Id.*; Ex. B, Decl. Losinski, ¶ 13; Defs.' Br. Summ. J., PD 05.01.100, ¶ FF, ECF No. 37, PageID.207.) The sanction lasts 30 days, and then until "reclassification is complete." (*Id.*) The prisoner remains on this status until they "can return to a work or education program assignment." (*Id.*) "Reclassification by its very name is not an assignment back to the same position." (Ex. B, Decl. Losinski, ¶ 13.)

## VI. Defendants are entitled to Qualified Immunity.

Plaintiff claims that because Defendants violated his rights, and his rights are clearly established, Defendants are not entitled to qualified immunity. In support of this argument, Plaintiff identifies a Muslim's right to consume a halal diet and the Third Circuit's ruling about avoiding contact with pork, as the clearly established laws to put Defendants on notice. (Pl.'s Resp., ECF No. 46, PageID.319.) Plaintiff cited a dissenting opinion in the Sixth Circuit that included a comment saying, "ordering a Muslim prisoner-cook to handle pork *may* violate the Free Exercise Clause." (*Id.*, quoting *Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015). (emphasis added.) But something that "may" violate a right, does not make the right clearly established. Plaintiff also cited the MDOC Religious Handbook regarding halal food and restrictions involving pork (Pl.'s Resp., ECF No. 46, PageID.319), but then admits "there is no direct precedential case authority within the Sixth Circuit." (*Id.*)

Qualified immunity provides breathing room for officials to make mistakes without the threat of litigation liability if, at the time the decision was made, the law was not clearly established beyond debate. *Ashcroft v al-Kidd*, 563 U.S. 731, 743 (2011). When it comes to eating religious meals, there is no question that prisoners have the right to abstain from consuming foods that violate their religious beliefs. But religious meals are not the subject of this lawsuit. Consuming foods is not the same as passing a tray to someone else that contains food on it. Plaintiff testified that even if he put vegetables on the tray, he could not pass a tray that had prohibited food to someone else. (Defs.' Br. Summ. J., Ex. Dep. Trans., 39:22–40:7,

ECF No. 37, PageID.223–224.) The Supreme Court is clear, qualified immunity "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194 (2004). Food consumption cannot "logically" put Defendants on notice regarding Plaintiff's claimed prohibition about serving food.

The same goes for pork. Plaintiff adamantly claims pork was the issue, but his own witness testified regarding classification in 2017, the MDOC stopped serving pork, and pork products, in the kitchen years ago — and they did. (Pl.'s Resp., ECF No. 46-8, ¶ 5, PageID.351.) Even if Defendants were aware that handling pork would violate a Muslim's constitutional rights, that does not put them on notice that Plaintiff cannot pass a tray that does not contain pork. No one forced Plaintiff to touch pork or consume pork. Then again, Defendants would need some way to know of Plaintiff's religious beliefs. Defendant Losinski explained, "[t]here is a process and an appropriate person to talk with about religious accommodations and if we do not use that process, any prisoner can claim anything to avoid work assignments they don't want or obtain special treatment." (Ex. B, Decl. Losinski, ¶ 12.) Plaintiff claims that Losinski "denied his special needs accommodation" (Pl.'s Resp., ECF No. 46, PageID.300), but Plaintiff did not have an approved accommodation. There was nothing official in his file to alert the Defendants to any approved religious accommodation. The question is whether any of the Defendants would have known the situation they faced at the time, would violate Plaintiff's constitutional rights.

"Once the defense is raised, the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in that position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004) (citing *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992)). Nevertheless, as Plaintiff admits, there was "no direct precedential case authority within the Sixth Circuit." (Pl.'s Resp., ECF No. 46, PageId.319.)

To the extent Plaintiff claims Defendants failed to address the Turner factors (*Id.*, PageID.313.) Defendants must only establish a legitimate penological interest and it is Plaintiff's burden to establish the other three factors. See *Swansbrough v. Martin*, No. 1:14-cv-1246, 2016 U.S. Dist. LEXIS 181356, at *8 (W.D. Mich. Oct. 4, 2016) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003), *Figel v. Overton*, 121 Fed. Appx. 642, 646 n.2 (6th Cir., Feb. 4, 2005), and *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012). Defendants addressed the valid penological interest. (Defs.' Br. Summ. J., ECF No. 37, PageID.171–175.) Nevertheless, whether because Defendants did not violate a constitutional right, or the right was not clearly established, Defendants are entitled to qualified immunity.

## VII. Plaintiff's Michigan Constitutional claims still fail.

Plaintiff did little more in his complaint than cite the Michigan Constitution, to claim that all named Defendants violated his rights to worship according to his own conscience. (Am. Compl., ECF No. 30, PageID.131.) But state employees are

immune from suits for money damages, and Plaintiff has not alleged a state agency policy violated his rights — he argued these named Defendants violated his rights by misinterpreting policy. (Am. Compl., ECF No. 30, PageID.125.) "Regardless of the constitutional rights allegedly violated, damage remedies against individual government employees for those constitutional violations do not exist." *Neal v. Dep't of Corr.*, No. 253543, No. 256506, 2005 Mich. App. LEXIS 342, at *15 (Ct. App. Feb. 10, 2005). That leaves only prospective relief; but Plaintiff already has a permanent restriction from working in food service.

Plaintiff's Michigan Constitutional claim fails, and Defendants motion for summary judgment should be granted.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, and those previously stated, Defendants ask this Court to grant the motion for summary judgment and dismiss this case in its entirety.

Respectfully Submitted,

*/s/Jennifer A. Foster*
Jennifer A. Foster (P75947)
Assistant Attorney General
Attorney for Defendants
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
Fosterj15@michigan.gov

Date: August 1, 2024

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

### Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type Style Requirements

I, Jennifer A. Foster, hereby certify that:

1. This brief complies with the type-volume limitation of Local Civil Procedure Rule 7.2(c), because, excluding the part of the document exempted, this brief contains no more than 4,300 words, as allowed for dispositive motion replies. This document contains 4,297 words, as calculated by Microsoft Word 365.

2. This document complies with the typeface requirements of Local Civil Procedure Rules and the type-style requirements of Local Civil Procedure Rules because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook.

*/s/Jennifer A. Foster*
Jennifer A. Foster (P75947)
Assistant Attorney General
Attorney for Defendants

## CERTIFICATE OF SERVICE (E-FILE and U.S. MAIL)

I hereby certify that on August 1, 2024, I electronically filed the foregoing document(s) with the Clerk of the Court using the ECF System, and have mailed by United States Postal Service a paper copy of the above document to the following non-ECF participant:

Fathiree Ali #175762
Thumb Correctional Facility
3225 John Conley Drive
Lapeer, MI 48446

*/s/Jennifer A. Foster*
Jennifer A. Foster (P75947)
Assistant Attorney General
Attorney for Defendants