FILED - KZ
January 7, 2025 11:15 AM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
ems Scanned by ES/ 1/7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FATHIREE ALI,
Plaintiff,

vs

SUSANNE KNIGHT, et. al.
Defendants.
_____________________________/

Case No. 1:22-cv-287
Honorable Janet T. Neff
Magistrate Sally J. Berens

FATHIREE ALI, #175762
Thumb Corr Facility
3225 John Conely Dr.
Lapeer, MI 48446
_____________________________/

JENNIFER A. FOSTER
P.O. Box 30217
Lansing, MI 48909

PLAINTIFF ALI'S OBJECTION TO THE MAGISTRATE JUDGE DECEMBER 9, 2024 REPORT AND RECOMMENDATION

Under 28 USC §636(b)(1)(C), Plaintiff Ali, proceeding pro se, submit the following objections to the Magistrate Judge's findings and recommendation issued on December 9, 2024:

The following factual recitation considers all facts and inferences drawn therefrom in the light most favorable to Ali, the non-movant. See, e.g. City of Wyandotte v Consol Rail Corp., 262 F3d 581, 585 (6th Cir. 2001).

OBJECTION #1

As a matter of law, the report and recommendation neglects the required "liberal construction" to Ali's pleadings, documents and complaint.

Plaintiff contends as set forth below that the report and recommendation lack the "liberal constru[ction]" afforded pro se pleadings and documents, all which provides that a "pro se complaint, however inartfully pleaded must be held to a less stringent standard than formal pleadings drafter by lawyers." Erickson v Pardus, 551 US 89, 94 (2007); Franklin v Rose, 765 F2d 82, 85 (6th Cir. 1985)("the allegation of a pro se petition, 'though vague and conclusory, are entitled to a liberal construction.'")

OBJECTION #2

Plaintiff objects to the Magistrate Judge's Report & Recommendation that wrongly weighed disputed evidence in favor of the Defendants for his failure to exhaust his retaliation claim.

In analyzing Ali's retaliation claim the Magistrate relied upon Riggin v Cook, No. 2:20-cv-110, 2022 WL 816662, at *7 (W.D. Mich. Feb 3, 2022)(plaintiff failed to exhaust retaliation claim by failing to raise retaliation *at any point during the grievance process*). ECF No. 58, PgID.495. Ali contends that Defendants' grievance process commences at some type of verbal resolve, and points to evidence that he did in fact orally discuss no "further retaliation" with the involved staff member. ECF No. 37-9, PgID.238. The court misses the grievance plain language:

> Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two days after becoming aware of a grievable issue... ECF No. 37-8, PgID.230 §P.

While the grievance denote Ali's complaint to involved staff to resolve further retaliation, neither Defendant deny this notice. R.37-9, @238. The Defendants and Magistrate suggestion that the claim should have been clarified in another section of the grievance do not pass muster of the holding in Maben v Thelen, 887 F3d 252 (6th Cir. 2018).

The Sixth Circuit held in Maben that an oral complaint is just as good as a written one. Indeed, a reasonable juror could find in favor of Ali that his notice of retaliation at the verbal resolve put the Defendant on notice.

Still, the grievance do indicate retaliatory conduct. Because--in the--"[s]tate problem clearly" section--Ali explains that it is not until assertion of his religious practices do the Defendants ***THEN*** retaliate/assail threats at Ali "that the prison would take disciplinary actions against him if he refused orders to serve or handle haram food items." ECF No. 37-9, PgID.238. While the Defendants maintain it was simply advisory, MDOC policy do not condone the

aggression Ali did repeatedly receive and complained of from Defendants. See, Plaintiff's Response to Defendants Motion for Summary Judgment, pg.5; R.46-1. There is no law that Ali has to assert the magical word "retaliation" in his grievance to suffice notice. By taking the grievance as a whole, the verbal resolve complaint about retaliation and the narrative in the subsequent section gives the Defendants notice, and a reasonable juror could find this materially disputed fact in favor of Ali.

This Court should not uphold the report and recommendation, and find that Ali did exhaust the retaliation claim.

OBJECTION #3

Ali sufficiently made out a claim under RLUIPA against proper Defendants that are: 1) not moot, and 2) contains a triable issue of facts as to whether Ali has a claim under RLUIPA.

A. Because Ali can face potential future harm, his claims for injunctive and declaratory relief is not moot.

The report and recommendation accepted the Defendants' contention that Plaintiff's RLUIPA and official capacity claims for injunctive and declaratory relief are moot because Plaintiff is no longer confined at LCF. R.58, @497. Then the court observed Defendants' reply argument contending that Plaintiff had received injunctive relief as a result of permanent medical restriction issue by LCF. Id. But, countervelling evidence from Ali shows a clearance to work food service at Saginaw and Thumb Corrections Facilities. Id. The court then concluded that even though Ali's claims involved MDOC Policy, his claim about "wrongful interpretation and implementation of PD 05.01.100 was unlawful practice that infringed Plaintiff's constitutional rights" had not properly challenged the validity of the policy itself. Id. @498.

First, Ali contends that his pleadings, documents and complaint is entitled to a liberal construction. Second, the Defendant never contested mootness under

the ground the Magistrate ruled, and Defendants waive any challenge to it. The court exceed its scope in deciding the claim. Lastly, the claims Ali seeks--injunctive and declaratory relief--are not moot due to his transfer from Lakeland because other facilities are bound by the same policy and can potentially assign him to food serve and subject him to the same acts that violates his sincerely held religious beliefs. Besides, the Sixth Circuit holding rejects the Magistrate's conclusion in Colvin v Caruso, 605 F3d 282, 295-96 (6th Cir. 2010)(where the inmates faces the potential for future harm following the transfer, injunctive relief was not moot because policy applied to new facility) Also see, Spencer v Kemma, 523 US 1, 17 (1988).

Because Ali has presented evidence that he is not permanently medically restricted from food service; and have since been cleared and assigned food service, his claim is not moot under Colvin at 295-96.

B. There is a triable issue of fact as to whether Ali has a claim under RLUIPA

Ali adequately substantiate his RLUIPA claim in these proceedings.

1. The record contains ample evidence regarding the sincerity of Ali's beliefs. See Ackerman v Washington, 16 F4th 170, 179 (6th Cir. 2021). Most significantly there is Ali's own declaration--along with all of his other filings before this court--references his extensive study of Islam, including his consistent attendance at weekly services since 1989, his review of the Qur'an and related texts. Ali Affd. R.46-1. These submissions demonstrate that Ali has a deep profound interest in and understanding of his version of Islam.

The sincerity of Ali's belief in the particulars of Islam requirements of handling/serving haram foods is also well-substantiated. Again, Ali's own declaration and Islamic text makes clear that under his interpretation of Islam, handling or distributing haram foods is strictly prohibited. Id., R.46-2, R.46-3,

46-4. The Magistrate did not raise any question as to the sincerity of Ali's beliefs.

2. There is similarly significant evidence that Ali's religious exercise has been substantially burdened. See Ackerman @179. Defendants actions have combined to make it impossible for Ali to function in food service duties consistent with his religious views, namely one that both excludes handling and/or serving harms food to others. By threats of looming disciplinary sanctions, Ali has been coerced to abandon his long held beliefs. This has created for Ali an untenable choice between "following the precepts of his religion and forfeiting benefits." Hayes v Tennessee, 424 F.App'x 546, 555 (6th Cir. 2011), specifically defilement, humiliation, religious hope and blessing, and emotion stress. By coercive force to serve haram foods, Defendants have "'effectively bar[red] Ali 'sincere faith-based conduct" altogether. Haight v Thompson, 763 F3d 554, 565 (6th Cir. 2014)(quoting Living Water Church of God, 258 F.App'x 729, 739 (6th Cir. 2007)).

This substantially burden is directly traceable to Defendants. Most obviously, the obstinate rejection of Ali's formal request to work, but not handle/serve haram foods. R.30 @125-126; R.46-1. Regardless of the Defendants' claimed newness of Ali's request[1]--though others' work duties were readily accommodated[2]--Defendants knowing placed Ali in positions of defilement.

Defendants argue that Ali's religious beliefs were not substantially burdened for several reasons, all wrong. They contend that Ali chose to work and that they only made aware of the consequences if he did not work. Granted, a Morton's Fork for Ali.

fn.[1] Pitts: R.37-3 @194; Torrey: R.37-6 @215; and Knight: R.37-10 @242.

fn.[2] See Affidavits of Abbey: R.46-6; Bobo: R.46-10; Hoffman: R.46-11; Blount: 49-1; and Murphy: R.49-2.

3. Because Ali satisfied his initial burden of showing that his religious beliefs were substantially burdened by government actions, the burden shifts to Defendants to show that their conduct was the least restrictive means of meeting a compelling government interest. Cavin v Mich. Dep't of Corr., 927 F3d 455, 458 (6th Cir. 2019), limited to "the justifications [Defendants] cited at the time [they] made the decision." Fox v Washington, 949 F3d 270, 283 (6th Cir. 2020). All but Defendant Losinski, made no attempt to satisfy this "daunting" test. Cavin @458. Nor could they. Still, Losinski's pre-textual justification fails. There is nothing in the record to begin to justify the Defendants' conduct to coerce Ali to commit haram acts. Defendants attempt to justify denial of Ali's accommodation, but their justification is far from meeting strict scrutiny. That leaves Defendants' self-serving affidavits as the sole record evidence of their reasoning. This makes sense, because this general and "broadly formulated" interest, Ramirez v Collier, 595 US 411, 427 (2022), is precisely the kind of "hypothesized or invented post hoc" justification that is insufficient to satisfy the government's burden. Fox @283.

Denying Ali any accommodation was far from the least restrictive means of achieving a compelling governmental interest. The record contains evidence that Defendants did not view it was necessary to categorically deny religious accommodations for food service, because they had approved others with similar beliefs. There is nothing in MDOC policy condoning the denial of a religious accommodation for food service on that ground. In any event, if the Defendants had genuine concerns about the sincerity of Ali's religious beliefs, they could have left him to rolling sporks or serving drinks.

C. The Magistrate's bar on RLUIPA damages against state officials sue in their individual capacities is irreconcilable with intervening Supreme Court precedent.

Plaintiff objects to the district court conclusion that money damages were categorically unavailable in RLUIPA suits. This determination was based on a decision from a decade ago holding that RLUIPA does not allow damages claims against state officials in their individual capacities, reasoning that a clear statement was required to allow claims and that RLUIPA did not provide a sufficient clear statement. Haight, 763 F3d at 568-70. That cannot be squared with the Supreme Court's intervening decision in Tanzin v Tanvir, 592 US 43, 47-52 (2020).

In the wake of Sossamon [v Texas, 563 US 277 (2011)], Haight reasoned that an equivalently clear statement was required to allow damages claims against officials sued in their individual capacities and that because Sossamon held that RLUIPA did not contain sufficiently clear language that could enable money damages in individual-capacity suits. Haight, £568-70. Haight did however, note than "eminently clearly statute" could permit individual-capacity money damages. Id at 570.

Haight does not survive the Supreme Court's 2020 opinion in Tanzin, in which the Court unanimously construed RLUIPA's sister statute, the Religious Freedom Restoration, to plainly authorize individual-capacity suits against federal officers for mmoney damages.. 592 US t 47-52 (RFRA "plain meaning at the time of enactment" authorized individual-capacity suits for money damages). Tanzin analyzed RFRA's text, context, history, and purpose, as well as the Court's precedents (including Sossamon) and held that RFRA provides a private right of action for damages against officer in their individual capacities. Id.

The Court held that RFRA's remedial provision provides for individual-capacity officer suits in the first instance because (1) the text statutorily defines "government" to include "official" and "other person acting under color of law", and (2) RFRA draws on §1983 same language, which permits

individual-capacity officer suits in the same filed of civil rights. Id at 47-48. Next, the Court concluded that RFRA's private right of action authorizes money damages as "appropriate relief" in individual-capacity suits because: (1) Congress enacted RFRA to restore the pre-Smith landscape, which include a right to damages in individual-capacity suits under §1983; (2) damages might be the "only form of relief" available to remedy violations of RFRA; and (3) Congress--which knew how to write statues to limit available remedies--deliberately chose to not do so in RFRA. Id at 48-52.

Tanzin's reasoning as to RFRA applies with equal, if not greater, force to RLUIPA. The text of RLUIPA's cause of action is materially identical to RFRA's, and the statues share the same context, purpose, and history.

Because it "necessarily follows" from RFRA and RLUIPA's use of the "same phrase" that the statutes be "given the same broad meaning," Tanzin authorizes individual-capacity suits under RLUIPA for money damages. Hobby Lobby, 573 US at 696 n.5. It would be incongruous to interpret these sister statutes differently, particularly given the well-established practice of construing RFRA and RLUIPA the same way. Id. see also Hold, 574 US at 358.

In short, the plain text--and thus RLUIPA--"provides a clear answer' to whether damages are available against government officials sued in their individual capacity. See Tanzin, 592 US at 47. This Court should hold that RLUIPA entitles Ali to damages against the Defendants in their individual-capacity.

For the foregoing reasons Ali has at the very least established a triable issue of fact that his rights under the RLUIPA were violated.

OBJECTION #4

Plaintiff objects to the report and recommendation dismissal of his Eighth Amendment claim.

When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmates's health or safety. Farmer v Brennan, 511 US 825, 835 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. Beers-Capitol v Whetzel, 256 F3d 120, 125 (3rd Cir. 2001).

The core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. Hudson v McMillian, 503 US 1, 5-6 (1992). the court must judge the reasonableness of the force used from the perspective and with the knowledge. ... In determining whether the use of force is malicious or sadistic, the court should evaluate the need for application of force, the relationship between that need and the amount of forced used, the threat "reasonably perceived by the responsible officials" and any efforts made to temper the severity of the forceful response. Husdon, at 6-7; Kelly Labelle, 2022 US Dist LEXIS 234711.

Based on the evidence presented in these proceedings, Ali should be permitted to proceed with his Eighth Amendment claim.

OBJECTION #5

Ali objects to the Magistrate's dismissal of Knight, Torrey and Pitts from the equal protection claim based on her misinterpretation of the Blount and Murphy's affidavits.

Plaintiff contend that all Defendants violated his right to equal protection under the Fourteenth Amendment by treating him differently than other prisoners working in food service. R.30 @130-131. The Defendants accommodated other prisoners "work duties in food service that did not compromise their beliefs, medical or age disabilities. Id. @125.

In her report and recommendation, the Magistrate found Andrew Blount, #255961 and Johnny Murphy, #177215 to not be similarly situated to Plaintiff because the were on the vegan menu. R.58 @504.

Ali objects to this finding because contrary to the Magistrate's assessment neither Blount, nor Murphy attest to being on the vegan menu. Both prisoners did attest to their work duties in food service and that their duties were scheduled or approved by Defendants Knight, Torrey and Pitts. R.49-1; R.49-2. Both prisoners attest that they did not have to handle any haram foods which violate their Muslim beliefs. Id. Both prisoners attest to witnessing Defendants Knight and Pitts reassign Ali--after protests about his beliefs--to a work duty that required him to handle haram foods. Because the Magistrate's conclusions are incorrect, it is necessary to reject her recommendations and re-evaluate Blount and Murphy's affidavits as they relate to Ali's equal protection claim. Similarly, Hoffman affidavit was wrongly rejected, because every aspect need not be similar.

Still, the Magistrate erroneously granted summary judgment for Defendants Knight, Torrey and Pitts. The summary judgment standard requires taking the non-movant's version of facts as true, however, Consol Rail Corp., 262 F3d at 585, and the Defendants' self-serving assertions ignore record evidence that Ali was treated differently than other prisoner. Because neither Defendant attempted to justify their conduct--disparate treatment of work duties concerning the handling of haram foods based on a prisoner religious belief--summary was improperly granted due to the present triable issue of fact as to whether unreasonably and knowingly violated Al's rights. See Humphrey v Mabry, 482 F3d 840, 847 (6th Cir. 2007)(qualified immunity does not protect "those who knowingly violate the law"). The Defendants conclusory statements--"I did not violate Mr. Ali's constitutional right"--do not offer an explanation, must less justification, of their conduct, their discriminatory behavior and burden of Ali religious exercise was unconstitutional.

This court should permit Ali to proceed with his claims against all Defendants on his equal protection claim under the Fourteenth Amendment.

RETALIATION CLAIM
OBJECTION #6

As a matter of law, mere threat of disciplinary sanctions is sufficient to prove an adverse action, the Magistrate's analysis is inconsistent with Sixth Circuit precedent. Summary judgment was improperly granted.

Plaintiff Ali contends that Defendants retaliated against him in response to his exercise of his religious beliefs by threats of disciplinary sanctions if he did not comply with orders to perform work duties that violated his religious regulations. R.30; R.46-1. Defendants contend that their responses were not retaliatory, but advisory because Plaintiff chose to work. The report and recommendation failed to acknowledge a material dispute between the parties, rejected threats as an adverse action, and took Defendants statements as they suggested, advise. Such disputes is not for the court, but the jury.

The Magistrate's conclusion is not consistent with the holdings in Hill v Lappin, 630 F3d 468, 474 (6th Cir 2011), nor Maben at 266-67. In this case, the the Magistrate Judge plainly erred because it: 1) determined that placement on unemployable status with its attendant consequences in not punishment that could constitute adverse actions; 2) settled the retaliatory claim in favor of Defendants even though the claim--that Defendants threaten to issue a misconduct ticket for purpose of imposing disciplinary sanctions for not serving unlawful foods--was not challenged and waived; 3) injected evidence not offered by Defendants to imply that the Defendants did not threaten Ali; 4) restricts the Scott [v Churchill, 377 F3d 565 (6th Cir. 2004)] holding to require issuance of a misconduct ticket in order to find whether a mere threat to file a misconduct ticket is sufficiently adverse to deter the exercise of First Amendment rights; and, 5) determined that there was evidence to show that claimed Defendants'

threats were based on a legitimate violation of policy, though claim was not contested by Defendants.

A. Ali objects to the report and recommendation discounting MDOC unemployable status as sufficiently an adverse action under the facts this case presents to deter from engaging in protected conduct.

The Defendants argued that Plaintiff cannot establish an adverse action simply because he was not actually placed on unemployable or "OO" status. Further, the threats Plaintiff accused them of were not retaliatory, but mere warnings advising of consequences if he chose to not work. The Defendants contend that Plaintiff chose to work, even though Ali's assertions claimed that he was coerced by the Defendants threats of disciplinary sanctions. The report agreed with the Defendants' version of the disputed material facts.

In doing so, the court found that placement on unemployable status with its attendant consequences is not punishment that could constitute adverse action, but rather is simply means to ensure that those prisoners who *choose not to work* (a choice allowed by policy) are not treated more favorably than those who do. R.58 @508. Even though the "OO" punishment exceeded the seven days lost of privileges in Maben.

However, the court ignores evidence that while Ali expressed a willingness to work, his strongly exercised his religious expressions to not handle haram food. But, under the Defendants coercive pressures, he did work, but not by choice as the court and Defendants intend. What the court misses is that the policy is fashion to punish those who choose not to work, no where does it consider those who are unable to preform the duty for religious observance and willing to work.

And the fact that Torry referred Ali back to classification to be "encouraged" demonstrates retaliatory conduct. R.37-6 @215, while Pitts paints a different story of:" 'OO' status" or "further consideration of work assignment." R.37-3 @195. These post hoc excuses do NOT favor grant of summary judgment.

And, as the evidence reflects--which the court did not address Ali's argument to the fact--any "OO" sanction imposed upon Ali would have been permanent, or at least until he completely surrendered his religious beliefs. Such treatment is adverse under Hill and Maben; this Court should find as such.

Plaintiff respectfully ask this Court to reject the Magistrate's recommendation and determine the Defendants' threat as adverse; alternatively permit the jury to decide this question of fact.

B. Magistrate erroneously determined that a threat to issue a misconduct ticket is not sufficiently adverse action to deter protected conduct.

While the case law speaks most often in terms of "any conduct that would naturally deter a person of ordinary firmness from engaging in that conduct" explained in Thaddeus-X v Bladder, 175 F3d 394 (6th Cir. 1999); this case is more accurately described by Hill [v Lapin, 630 F3d 468, 474 (6th Cir. 2010)] holding addressing "mere threats to issue a misconduct ticket for disciplinary sanction." See, Maben v Thelen, 997 F3d 252 (6th Cir. 2008).

Consider Annabel v Erichsen, 2018 US Dist LEXIS 118538, *35; 2018 WL 3436726 (E.D. Mich. July 2018), a case where an officer simply told a prisoner he could not attend a group meeting, and that he should have kept his mouth shut about Erichsen, and attending the group would result in disciplinary sanction. The court found that the "mere potential threat of disciplinary sanctions is sufficiently adverse to support a claim of retaliation." See, Maben and Scott, supra.

Then, in Brown [v Smith, 2018 US Dist LEXIS 195684, *8; 2018 WL 6011243 (W.D. Mich. Nov. 16, 2018)], the court opined that "if a threat to file a grievance is protected conduct and a threat to file a false misconduct is adverse action, Plaintiff has stated a First Amendment retaliation claim." In explaining its decision, the court concluded that while the Sixth Circuit Court of Appeals has not "determined conclusively whether merely threatening to file a grievance

constitutes protected activity." Pasley [v Conerly, 345 F.Appx 981, 984 (6th Cir. 2009)]. The Court further concluded that "[b]ecause Pasley's threatened grievance was arguably legitimate, his conduct was arguably protected by the First Amendment. Id. at 985.

In the same way, these cases strongly support Ali's position that after he invoked his beliefs and alerted the Defendants that their actions violated his sincerely held reigious beliefs--did retaliate with threats carrying weight of disciplinary sanctions-- so that Ali would forego his religious belief. Defendants chilling threats carried the clear subtext of potential adverse regulatory action.

OBJECTION #7
Ali objects to the Magistrate's dismissal of his Free Exercise claims and grant of qualified immunity for all Defendants

A. Free Exercise Clause Violation

The Magistrate's decision undermines long standing precedents of the United State Supreme Court of whether Defendants actions placed a substantial burden on Ali's right to free exercise of religion when their actions and coercive statements forcefully caused Ali to abandon his sincerely held religious belief and engage in conduct that strictly violates those beliefs.

The Magistrate did not dispute the sincerity of Ali's religious beliefs or assess the merits of Ali's Free Exercise claim. Instead, it granted summary judgment on all claims against the Defendants (with exception of the equal protection claim as to Defendant Losinski) by impermissibly resolving fact questions in Defendants' favor, with a conclusion that "they fully complied with the policy and LCF procedures for assigning prisoners to prison jobs." R.58 at 514. In addition, the court concluded that it was not clearly established at the time of the violation that it would violate the Free Exercise Clause for a prisoner to have a right not to serve/handle food which violates their beliefs or

even pass a tray containing such foods to others. Id. at 515. Because both of those conclusions are incorrect, it is necessary to apply Turner [v Safley, 482 US 78 (1987)] factors to Ali's claim in the first instance.

1. Knight, Torrey and Pitts.

The standard for evaluating a Free Exercise claim is more lenient to the government than for an RLUIPA. But, it nonetheless requires the government to show that there is a "valid rational connection" between government conduct and a "legitimate governmental interest put forward to justify it." Turner, 482 US at 89. In no way did Knight, Torrey, or Pitts attempt to justify their conduct in denying Ali's attempt to not perform work duties which violate his religious beliefs. While denying to have anything to do with the classification process, they simply relied on the contention of "no authority" or to never before had a prisoner claim he could not serve the food based on their religious beliefs. See Affidavits, [Pitts: R.37-3 @194], [Torrey: R.37-6 @215], [Knight: R.37-10 @242], They did not address any other ways in which they were liable for Ali's complete inability to abstain from handling forbidden foods. Id. Where a prison official fails to provide any legitimate penological justification for an impingement on religious exercise, it is necessarily "unreasonable under Turner" and therefore violate[s] Free Exercise Clause." Maye [v Klee, 915 F3d 1084, 1083 (6th Cir. 2019)]. Because Knight, Torrey and Pitts offered no explanation, must less justification, of their conduct, their behavior in burdening Ali's religious exercise was unconstitutional, and the other factors do not matter. Koger [Koger v Mohr, 964 f3d 532, 543 (6th Cir. 2020) ], (quoting Spies v Voinovich, 173 F3d 398, 403 403 (6th Cir. 1999).

1. Losinski.

Though Losinski offered a purported justification for denying the religious accommodation--requiring all prisoners to work based on institutional need in

either Food Service, Unit Porter and Recreation Worker--does not pass constitutional muster. As an initial matter, there is no valid or rational connection between the denial and any legitimate government interest put forward. Turner, 482 US at 89. If there were, presumably a denial for accommodation to not handle/serve haram food based on LCF institutional need pool position would not be so plainly incompatible with prison policy. Instead, unlike the Magistrate's improper finding the Defendants *fully complied* with the policy and LCF's procedures [R.58 at 514], the MDOC policy manual makes clear that "any special needs of the prisoner ... shall be considered when making program classification decision." See Policy Directive, R.37-5, @204. Similarly, the Religious Handbook, pg. 6, 9, discuss a Muslims' restriction of handling forbidden foods. There can be no valid, rational connection between applying a far harsher policy to Muslims like Ali and far less conditions (porter/recreation work duties) to individuals with age or medically restrictions.

Further, it is unlikely that even Losinski herself believed there was a connection between her denial and the purported penological justification, given that she was willing to waive the justification for other individuals on other occasions. See Affidavits, [Abbey: .46-6], [Bobo: R.46-10], [Hoffman: R.46-11], [Blount: R.49-1] [Murphy: R.49-2], and [Caver: R.46-8]; Report and recommendation, R.58 @501.

Even if recourse to the remaining Turner factors is necessary, all justification by Losinski, Knight, Torrey and Pitts fails at that stage too. There were no available alternative means of allowing Ali to exercise his right to avoid handling/serving haram food besides not ordering him to serve serve haram foods. For example, the panel in Jones [v Williams, 791 F3d 1023, 1033-34 (9th Cir. 2015)], held that accommodating a prisoner's right to avoid handling pork isn't less burdensome than the religious-based accommodations, such as providing Kosher

diets and disposable utensil, that we have held for many years are constitutionally required. Id. @1033. As Ali declared without contradiction, he was willing to work; but the Defendants invidiously coerced Ali into repetitive defilement and sins by committing acts completely forbidden by his religious beliefs. Even the Defendants admit that consequences came with Ali's exercise. There thus would be no way for Ali to not handle/serve haram foods without disciplinary sanctions. Any impact on the accommodation on guards, other prisoners would be minimal, if any. The prison already provides special needs for age and medical needs; and selected religious needs, so there is no reason to think that it would unduly complicate existing work duties so that Ali do have to serve/handle haram foods. All the Defendants' denials of Ali's accommodation, which "impinged on [his] constitutional rights" by forcing and coercing him to abandon his religious belief, was not "reasonably relate to legitimate penological interest" and was therefore invalid, and finds it valid if so. Id. at 542 (quoting Turner at 89).

B. Mr. Ali's Right was Clearly Established.

Ali objects to the Magistrate's findings that there is no legal authority establishing a prisoners' right to not serve food that violate their religious beliefs. R.58 @515. As a result of the Magistrate's rejection of Williams v Bitner, 455 F3d 186, 193-94 (3rd Cir. 2006), with its factual similarities to this case, Ali, further objects to the court's wrongful heighten of the factual pattern in its resolve even though "novel factual circumstances" are sufficient to give fair and clear warning about what the law requires. Id. @514.

A clearly established right is one whose "contours" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Feathers v Aey, 319 F3d 843, 848 (6th Cir 2003). "This is not to say that an official action is protected by qualified immunity unless the very action in

question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." Hope v Pelzer, 536 US 730, 739 (2002)(citations omitted)(quoting Anderson v Creighton, 483 US 635, 640 (1987)).

The inquiry turns on the 'objective legal reasonableness of the action ... that were clearly established at the time it was taken." Pearson v Callahan, 555 US 223. The Supreme Court explained that:

> "Our opinion in Lanier [United States v Lanier, 520 US 259, 271 (1997)] thus makes clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances. Indeed in Lanier, we expressly rejected a requirement that previous cases be 'fundamentally similar.' Although earlier cases involving 'fundamental similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with 'materially similarly' facts. Hope @ 741.

A case with near-identical facts need not exist for a right to be clearly established. Jackson-Gibson v Beasley, 118 F4th 848, 858 (6th Cir, 2024); Rivas-Vilegas v Cortesluna, 595 US 1, 5 (2021).

The Sixth Circuit Court pronounced that governmental officials "can still be on notice that their conduct violates established law even in novel factual circumstances," and prior cases need not be "fundamentally similar" to the facts at hand to put defendants on notice. Instead, the "salient question is whether "the state of the law" give defendants "fair warning" that their actions are unconstitutional. MacIntosh v Clous, 69 F4th 309, 319 (6th Cir. 2023).

All the Defendants had "fair warning" that their conduct to coerce Ali to forego his sincerely held religious beliefs or to engage in conduct that violates these beliefs places a substantial burden on an individual's right to free exercise of religion. Sherbert v Verneer, 374 US 398, 404, 406 (1963); Williams at 193-194. Besides, the Ninth Circuit in Jones afforded the Defendants notice. The Jones panel interpreted Sherbert constitutional principles to apply with "obvious

clarity: and a "fair and clear warning" that Jones had a right to abstain from conduct directly violative of his religious beliefs. Id @1033. Likewise, the Court recognized the state of law from other circuits which determined that:

> "Between 1974 and 2006, four other circuits held that prisoners have the free exercise right to avoid handling certain foods as part of their work duties. See Williams v Bitner, 455 F3d 186, 193-94 (3rd Cir. 2006)(finding this right clearly established); Hayes v Long, 72 F3d 70, 74 (8th Cir. 1995)(same); Kenner v Phelps, 605 F2d 850, 851 (5th Cir. 1979); Chapman v Keeindienst, 507 F2d 1246, 1251-52 (7th Cir. 1974).

While dismissing Ali's Free Exercise claim the Magistrate's decision wrongly presumes there is no authority that clearly establish at the time of the events in question that prisoners have a right not to serve food that violates their religious beliefs. Id. Plainly the Magistrate's decision unreasonably rejects a conclusive line of cases by Ali that expresses a different conclusion. Indeed, that can not be squared with Sherbert, Jones, and Williams. This court should therefore entertain the question for this circuit and follow theses holding that the free exercise right afford Muslims prisoner to avoid handling certain foods as part of their work duties.

So, Mr. Ali rightfully turn to the opinions of the United Supreme Court and sister circuits. The Sixth Circuit determination of whether the law is clearly established "must look first to decisions of the Supreme Court, then to decision of this Court and other courts within our circuit and finally to decisions of other circuits." Guertin v State, 912 F3d 907, 932 (6th Cir. 2019)(quoting Baker v City of Hamilton, 471 F3d 601, 606 (6th, 2006).

Given the above reference case law, all the Defendants were plainly on notice that their conduct violated the Free Exercise Clause. As for Knight, Torrey and Pitts, they have not attempted to justify their behavior as related to a penological purpose but has merely asserted to never before had a prisoner claim the could not serve the food based on their religious beliefs. The summary

judgment standard requires taking the nonmovant's version of facts as true, however, Consol. Rail Corp, 262 F3d at 585, and Knight, Torrey and Pitts' self-serving assertions ignore record evidence that they knew what foods Ali required to comply with his religious beliefs--MDOC Religious Groups Handbook, pg. 6 --, knew that Ali's attempts to avoid haram and cross-contaminated food defilement. In light of the clear mandate that the Free Exercise Clause requires, there is a triable issue of fact as to whether these Defendants unreasonably and knowingly violated Ali's rights. See Humphrey v Mabry, 482 F3d 840, 847 (6th Cir. 2007)(qualified immunity does not protect "those who knowingly violate the law").

Losinski also was similarly on notice that her conduct was unconstitutional. Though she asserted a penological purpose in denying the request work duties accommodation, as discussed above, a genuine fact dispute exist as to whether Losinski's denial of Ali's work request was in fact reasonably related to such a purpose. Under Ali's version of the fact, Losinski refused his accommodation without any such purpose, a violation that would put her on notice of the unconstitutionality of her actions. Again, this case is on all four with Sherbert; particularly Jones, Williams and the line of cases from other circuits in which the Court convincingly rejected a defense of qualified immunity based on the same reasoning.

Lastly, the report and recommendation impermissibly resolved a material dispute for the Defendants--that Plaintiff always had an option to refuse work--over Ali's claim that there was no choice due to coercive pressures of disciplinary sanctions. R.58 @515. Court must not "weigh the evidence [or] determine the truth of the matter but .. but determine whether there is a genuine [dispute] for trial." See Anderson v Liberty Lobby Inc, 477 US 242, 249 (1986); White v Baxter Healthcare Corp., 533 F3d 381, 390 (6th Cir. 2008).

CONCLUSION

For the foregoing reasons, this Court should reverse reject the Magistrate's Report and Recommendations and permit dismissed claims to go forth for further proceedings.

Respectfully submitted,

DATED: December 23, 2024

FATHIREE ALI

## VERIFICATION

Plaintiff Fathiree Ali, pursuant to 28 USC §1746, verify under the penalty of perjury that the facts stated herein is true and correct.

DATED: December 23, 2024

FATHIREE ALI

## DECLARATION OF MAILING

Plaintiff, Fathiree Ali, declare under the penalty of perjury that on the 23rd day of December, 2024, he handed the prison counselor an copy of PLAINTIFF ALI'S OBJECTION TO THE MAGISTRATE JUDGE DECEMBER 9, 2024 REPORT AND RECOMMENDATION and VERIFICATION to be mailed to Jennifer Foster, at P.O. Box 30217, Lansing, MI 48909.

DATED: December 23, 2024

FATHIREE ALI

0233

FATHIREE ALI, #175762
Thumb Corr. Facility
3225 John Conley Dr.
Lapeer, MI 48446

US POSTAGE PITNEY BOWES
ZIP 48446 $ 000.69⁰
02 4W
0000376850 DEC 27 2024

POSTAGE DUE 0.84¢
3.5 oz

Office of the Clerk
United States District Court
107 Federal Bldg.
410 W. Michigan Ave.
Kalamazoo, MI 49007