FILED - GR
October 17, 2025 1:35 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW   SCANNED BY: J✓ /10-17

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FATHIREE ALI,

    Plaintiff,

vs

Case No. 1:22-cv-287
Honorable Jane M. Beckering

KIRSTEN LOSINSKI,

    Defendant.
_____/

**PLAINTIFF'S REPLY TO DEFENDANT LOSINSKI'S RESPONSE TO PLAINTIFF'S MOTION FOR A NEW TRIAL OR TO ALTER OR AMEND THE JUDGMENT**

## Introduction

Defendant's conclusory response offers this Court nothing persuasive. It misrepresents both this Court's trial and pretrial orders, ask this Court to ignore procedural process along with a jury's role to decide the case, and fails to respond to the prejudicial impact of its flagrant inflammatory comments. It also urges this Court to minimize, if not ignore, fraudulent pleadings. Defendant's invitation to discard fundamental precepts of civil procedures should be declined, and grant Mr. Ali's motion for a new trial.

## ARGUMENT

    Even though Defendant wrongly interprets this Court's Order barring use of Plaintiff's conviction, the prejudicial harm and absence of curative instruction, alone or altogether, denies Plaintiff a fair trial.

Defendant argues for affirmance on Ali's claim almost exclusively on the grounds that Plaintiff open the door by reference of "going home." so as to use his conviction to impeach. ECF No. 181, PgID.1150-1151. While incorrectly putting this accusation of hypocrisy under the rubric of impeachment, Defendant does not challenge the flagrant misconduct prejudicial impact nor the lack of a curative instruction, and for good reason.

As the opening brief explained, as a matter of law, the inflammatory conduct was flagrant, insensitive to a juror's rape trauma, breach of an agreement and limine order. Its intentional emphasis to "murder" and then a "triple homicide" represents the most inflammatory and prejudicial evidence possible to confuse and override any rational consideration of the civil rights claim at issue. An inflammatory impact that cut deep into a seated juror's rape trauma. Defendant ignores that prejudicial bell rung on the sensitive juror (as well as the other jurors), but argues that Plaintiff could have removed her with a preemptory challenge. ECF No. 181, PdID.1151.

First, without clairvoyance, in no way could Plaintiff use a preemptory challenge to know that Defendant would violate the Court's limine order or their insensitivity to a juror's rape trauma agreement to be impartial so as long as she remained unaware of Plaintiff's conviction. Indeed, courts consistently recognized convictions for crime of force or violence do not fall within Rule 609(a)(2). See US v Hayes, 553 F2d 824 (2nd 1977). Further, courts consistently hold that violent crimes do not reflect directly on the witness's propensity for truthfulness, and also carry a high risk of unfair prejudice which the average juror, despite curative instructions--to limit the influence of a criminal record to the issues of credibility. US v Puco, 453 F2d 539 (2nd Cir. 1971), Niaa v Warden, N. Cent. Corr. Inst., 994 F3d 746 (6th Cir. 2021).

<u>Niaa</u> procedural history is instructive. In that case, the jurors were made aware of the defendant's past criminal record. The court held that a "juror's knowledge of a defendant's past criminal record has long been recognized as always highly prejudicial." See, Reed-Bey v Pramstaller, 2013 US Dist LEXIS 159465.

Second, Defendant's blame that the Court's order lack clarity is unavailing. There was no ambiguity in this Court's pretrial order statement which clearly

excluded any reference to Mr. Ali's murder conviction. Neither was Defendant's statement to not use references to conviction misinterpreted. Defendant inflammatory comments was calculated and accomplished its harm. But still, Defendant's cover that Plaintiff opened the door for--impeachment purposes--offers no record support. This may be the case if the Court did not criticize counsel's comments, but the opposite is true, even though the jurors went without curative instructions to stop the bleeding.

Because of the paramount of fairness afforded to all litigants, even prisoners like Ali, this Court should revisit its mistrial ruling, and hold Defendant accountable for its flagrant violation of its limine order, breached agreement, and prejudicial harm which infected the fairness of Ali's trial. A new trail should be granted.

ARGUMENT II

>Barring Plaintiff's impeachment witnesses necessary to present his case does fall outside of the range of principled--rules of evidence--outcomes and violates due process.

Ali argued in his opening brief that the Court's refusal to call two prisoner-witnesses deprived him of the procedural--Rules of Evidence--process enjoined under the Due Process Clause. Both Fed.R.Evid 607 and 608 allow for character or credibility of witness' to be attacked. Although Defendant exclusively rely on Fed.R.Evid 403 and 611, to reason that the Court properly excluded Ali's impeachment witnesses -- ECF 181, PgID.1154 -- that posture fails since the Court simply did not apply the Rules of Evidence standard.

At trial, Losinski opened the door when she gave testimony about her handling of the classification process with other prisoners. [Tr. ___, 8/6/25]. That testimony was under attack. For reasons which Ali did explain to the Court, he sought to impeach Losinsli only after she offered untruthful testimony. The

rules of evidence--607 and 608--allowed Losinski's impeachment from Grabiec and Sparks. Instead, this Court prevented development of that critical cross-examination evidence. At stake in this dispute was not just a matter of procedural law. At issue was the very definition of abused discretion which left Ali's case to the mercy of the adversary and Losinski's uncontested, though impeachable testimony. Credibility was central to all parties, though leeway was afforded to the defense. See U.S. v Markarian, 967 F2d 1098, 1103 (6th Cir. 1992)(courts have recognized the broad scope of allowable impeachment evidence).

The Advisory Committee Notes for Fed.R.Evid 607 and 608 is instructive. For example, the 607 Note explains that the denial of that right leaves the party at the mercy of the witness and the adversary, while the 608 Note permits an attack to be made upon the character of truthfulness. As described in the opening brief, this case hinged on whether Losinski classified Ali, other prisoners and gave them preferential treatment--and the prisoner-witnesses had material evidence directed to that testimony. ECF No. 173.

In fact, Losinski knowingly and systematically presented false evidence and testimony throughout these proceedings. But now, since Ali has scratched away the untruths, the truths are surfacing while Defendant's response seeks to minimize her initial untruthfulness by bringing forth her Employee Combined History Report which denotes dates other than what she averred in her declaration and testified to at trial. ECF No. 181-3, PgID.174. Naturally, Defendant argues that the differential of two days between the report and her trial testimony "does not make a material difference". Id., PgID.1158. Still, that determination is not for Losinski [or this Court] to decide, but the jury. Besides, that material difference was the focal point directed in this Court's instructions to the jury for the process of fairness, for instance:

* give it [evidence] whatever weight you believe it deserves." CV 2.05 - Consideration of Evidence.
* "it is your job to decide how much weight to give the direct and circumstantial evidence." CV 2.06, Direct or Circumstantial Evidence.
* "was the witness's testimony supported or contradicted by other evidence." CV 2.07 - Credibility of Witnesses. [Tr. ___, 8/7/25].

As such, the jury's scale for believability and fairness was compromised by Foster's obstruction of the truth. Granted, only now, does Foster brings forth evidence that supports Ali's trial testimony and discredits Losinski; but it does not erase the unfairness at trial which the jury had a duty to weigh.

Another example is the newly discovered evidence from David Smith. See Exhibit - A, Declaration of David Smith. Mr. Smith avers that Losinski classified him in October of 2018. He further avers that while Losinski did the classification interview, Scott Cline did the actual signing of his document because Losinski was in training. Evidence that further impeaches Losinski.

There's an old proverb: "Scratch a lie, find a thief." As the lies unfold, this trial (and its fairness) was stolen from Ali. Defendant and counsel kept these lies close to them up until the hour of trial. However, slowly, these new scratches are reflecting new light—i.e., accumulation of lies, impeachable testimony, as well as new evidence (Employmee History Report) offered by Defendant—that calls into question Losinski's testimony, and the integrity of this trial. This Court should therefore grant a new trial for the reasons presented, more so since only a jury can decide Losinski's "believability." Id.

ARGUMENT III

The court had a duty to probe the jury pool racial and religious bias, even though, the objection was preserved before Magistrate Berens.

The Defendant asserts that Ali did not preserve claim that the jury pool was tainted by prejudicial comments. ECF No. 181, PgID.1155. That is not true.

As demonstrated in Plaintiff's declaration, concerns of racial and religious bias was discussed, with objections, prior to trial with Magistrate Berens. ECF No. 173. Thus, it then became the duty of this Court to ensure a fair cross section of the community. 28 USC §1861. Upon the juror's expressed opinions that rang before the venire, the Court was under an obligation to probe potential prejudice and give curative instructions, it did not. Id., Ham v South Carolina, 409 US 524, 527-29 (1973).

Furthermore, as discussed in the opening brief, racial and religious bias in jury proceedings are uniquely corrosive which the Supreme Court have described a "recurring evil" that threatens the integrity of verdicts. Pena-Rodriguez v Colorado, 580 US 206, 208-210 (2017). And, when circumstances suggest a "reasonable probability" of racial prejudice, courts must engage sufficient inquiry to discover bias. Ham, 409 US at 527-29. Even though this Court took it upon itself to examine the jury--under Rule 47--it failed to make any inquiry or give curative instructions when the tainted comments rained upon the venire. Lambrix v Singletary, 520 US 518, 522 n. 4 (1997)(trial judges are presumed to know that law and to apply it in making their decisions.

All in all, Defendant's claim is unavailing, and this Court should grant Ali's motion; alternatively an evidentiary hearing or any other relief this Court deems appropriate under the law.

ARGUMENT IV

    Jennifer Foster's concealment of the truth, which both the Court and
    Ali relied upon is fraud which impacts the integrity of this case.

Ms. Foster's response devotes much argument to evidence, claims against Plaintiff's wife and JPAYs, which this Court determined not relevant, hearsay or inadmissible at trial, as smoke screens to minimize her fraud upon the Court. ECF No. 181. All that said, Ms. Foster recklessly disregarded her duty to the court

and discovery obligation to disclose. No court system can function without safeguards that interfere with its administration of justice. Demjanjuk v Petrovsky, 10 F3d 338 (6th Cir. 1993).

Notably, is the timing of disclosure by Ms Foster which she kept hidden until found out by Ali. Throughout these pleadings, Foster concealed and misled the judicial machinery to believe--Ali's testimony and examination of Losinski to the jury was unfounded--that Losinski preformed no classification duties before December 18, 2018. Then, when questioned about her affidavit at trial that Ali was referred back to her by Torrey, on December 4, Losinski testified that Ali was referred to someone else at classification. [Tr. ___, 8/6/25]. Losinski while strongly dismissing Torrey's report avowed that she had not acted in a classification capacity before December 18. Then, when pressed about Abby's December 4th, classification report, which reflected Losinski's signature, did she amend her story. And although not explicitly stated, Foster easily give rise to an inference that she knew Losinski's testimony was not true, had documents to that fact, but did nothing to undo/correct the fraudulent concealment in her pleadings or Losinski's testimony before the jury. Instead, Ms Foster simply kept silent while the fraud and deception directly prevented Ali from exhibiting his case fully and fairly. See Hazel-Atlas Glass Co. v Hartford-Empire Co., 322 US 238 (1944); Computer Leasco, Inc. v NTP Inc., 194 F.Appx 328, 339 (6th Cir 2006).

Until now, only after the proofs confirm accusations of fraud does Ms. Foster decide to come clean with Losinski's Employee Combined History Report, which verifies her job duties consistent with the testimony and evidence Ali asserted at trial. ECF No. 181-3, PgID.1174. As a matter of law, Losinski, if not Foster as an officer of the court, held a duty to disclose this information **before being exposed.**

Similarly, Foster's concealment and use of exhibits [see ECF 181-6, PgID.1203-1210] taken from Ali's MDOC Health Services medical file, which Ali did not authorize during discovery or otherwise, violates HIPAA. A reasonable inference from that concealment reflects that there is no limit that Foster will go to to win this case. Public disclosure and use of these illegally obtained documents should be stricken from the record. See Desparois v Perrysburg Exempted Village School Dist., 455 FAppx 659, 666 (6th Cir. 2012)(new claims beyond the scope of a responsive pleading should be stricken).

Another example, as explained at Argument II, David Smith avers that Losinski classified him prior to December. Although this Court blocked impeachment testimony from Mr. Grabiec, his Declaration goes directly to the dispute, that Losinski classified him in September. At this point, the MDOC is concealing the identity of those prisoners classified by Losinski on August 22, 2018. To be sure, eventually a Freedom of Information Act disclosure will reveal all prisoner-identities and Losinski as their classifying agent.

Because the Freedom of Information Act is not available to prisoners and the MDOC refuses to give Ali any information about Losinski, along with Foster's fraudulent concealment, this Court could simplify matters with exercise of its power to conduct a hearing, order disclosure of: (1) the MDOC Coms/system Time Stamp Computer Rreport for Losinski log activities on August 22, 2018; (2) classification emails; and (3) D-Bldg record logs for that date, in order to determine whether it has been the victim of fraud. See Chambers v NASCO, Inc., 501 US 32 (1991).

In the end, whether than just fess up to her fraud/concealment from the judicial machinery, Foster wildly attempts to turn the table of **her** fraudulent activities onto Plaintiff through diversions of witness tampering. This is

absurdly false. Each prisoner witness testified that no one influenced their testimony. [Tr.___, 8/6/25]. When that was not sufficient, Foster claimed that Plaintiff's wife influenced Sparks' declaration, even though they worked to cut off all access to plaintiff's witnesses from Plaintiff. The Court rejected that suggestion. [Tr. ___, 8/7/25]. And she now claims that Ali's wife provided AI generated testimonies to Roper and others. While not true, Foster is desperately seeking to deflect her fraud on the court; even though this argument fails because it exceed the scope of a responsive pleading. Despariois, 455 FAppx at 666.

In short, deception upon this Court should not be tolerated, and whether to be found now or later; it does not excuse withholding from the jury its duty to weigh all to determine Losinski's believability. This Court should grant Plaintiff's motion; alternatively an evidentiary to investigate and determine whether fraud was committed by a judicial officer.

CONCLUSION

After all, the remedy here should, if fairness demands, include a new trial absent the denial of impeachment witnesses, inflammatory comments, tainted venire, and fraud upon the court. Otherwise, procedural rules and constitutional protection becomes illusory. With all that said, even the cumulative error of these claims demonstrate that Ali was deprived of a fair trial. This Court should grant Ali's motion.

Respectfully submitted,

FATHIREE ALI, #175762

DATED: October 7, 2025

PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE

DECLARATION OF MAILING

    Plaintifff, Fathiree Ali, declare under the penalty of perjury that the following is true and correct, that on the 7th day of October, he handed the prison counselor an original of: PLAINTIFF'S REPLY TO DEFENDANT LOSINSKI'S RESPONSE TO plaintiff'S MOTION FOR A NEW TRIAL OR TO ALTER OR AMEND THE JUDGMENT, and VERIFICATION, to be mailed to: Jennifer Foster, Attorney General, at P.O. Box 30217, Lansing, MI, 48909.

DATED: October 7, 2025                                      FATHIREE ALI, #175762

Prisoner Name: FATHIREE ALI, #175762
Prisoner Number: _____
THUMB CORRECTIONAL FACILITY
3225 John Conley Drive
Lapeer, MI 48446



METROPLEX MI 480
15 OCT 2025 AM 16 L

US POSTAGE ™ PITNEY BOWES

ZIP 48446 $ 001.32
02 7W
0008038245 OCT 13 2025

United States District Court
Western District of Michigan
602 Federal Bldg.
110 Michigan Ave., N.W.
Grand Rapids, MI 49508-2363

49503-236399